## FITCH v. HELVERING, Com'r of Internal Revenue.

### No. 9822.

Circuit Court of Appeals, Eighth Circuit.
April 16, 1934.

Joseph F. Rosenfield, of Des Moines, Iowa (Joseph G. Gamble and Gamble, Read & Howland, all of Des Moines, Iowa, on the brief), for petitioner.

John G. Remey, Sp. Asst. to Atty. Gen. (Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before STONE and SANBORN, Circuit Judges, and WYMAN, District Judge.

SANBORN, Circuit Judge.

This is a petition to review an order of the Board of Tax Appeals redetermining a deficiency in petitioner's income taxes for the calendar year 1925 of $3,554.04. (27 B. T. A. 615.)

The question presented is whether the cancellation of petitioner's indebtedness by the F. W. Fitch Company in December, 1925, was a gift or a dividend.

On January 1, 1925, the petitioner was a resident of Des Moines, Iowa, and was and had been the President, a director, and the principal stockholder of the F. W. Fitch Company, a corporation doing business in that city. The Company had outstanding at that time 2,372 shares of stock, 2,182 shares of which belonged to the petitioner. The balance of 190 shares was owned by employees of the Company and by the relatives of the petitioner. One of these stockholders owned 60 shares, two owned 20 shares each, and nine owned 10 shares each. The Company had a board of seven directors. As President the petitioner received a salary of $12,000 a year. The company occupied a building which it leased from the petitioner. He had financed the erection of the building by placing a $37,500 mortgage upon it. In 1923 the Company loaned petitioner $22,500 to pay upon the mortgage, and took his note for that amount secured by 372 shares of his stock. In 1924 it loaned him an additional $15,000 upon his note, and this money was used to pay off the mortgage on the building. During 1925 the petitioner was having difficulties with his wife and was not actively in charge of the business of the Company. In January of that year he transferred 1,810 shares of his stock to his secretary. In April this stock was attached by his wife. On December 17, 1925, the wife secured a divorce from him, the attachment was released, and 600 shares of the stock were transferred to her and 1,210 shares to petitioner. He then had a total of 1,582 shares, 372 of which were pledged to the Company as security. The Company had assets of $339,331.46, liabilities of $31,130.88, and capital stock liability of $237,200. While the balance sheet of December 31, 1925 (Exhibit D) shows, "Appropriated surplus (advertising) $100,000," and "Surplus Deficit—Exhibit 'E'—$28,999.42," Exhibit E, Surplus and Undivided Profits Account, shows that the advertising for which the surplus was appropriated was for the year 1926; so that at the end of December, 1925, after reflecting the transactions hereinafter referred to, the Company had an actual surplus of approximately $70,000. The total indebtedness of the petitioner to the Company on December 23, 1925, was $37,500, and the open account of the petitioner on the books of the company showed a credit balance of $11,971.76. On that day there was a meeting of the Board of Directors, at which the petitioner was not present. The Board voted him an additional salary of $24,000, making his total salary for the year 1925 $36,000. It also voted: "That in lieu of F. W. Fitch's credit balance of $11,971.76 with the company; and to offset the same in full; that his note held by the company for $37,500.00 be and is hereby cancelled and returned to him."

The Company in making its income tax return for 1925 took a deduction for the $24,000 additional salary, which deduction was allowed. It charged $25,528.24 to its "surplus and undivided profits account" on December 31, 1925, this representing the difference between the $37,500 which the petitioner owed the Company and the $11,971.76 which appeared to his credit on its books. The Company made no deduction of the $25,528.24 upon its income tax return for 1925. No distribution of surplus was made to any other stockholder during 1925. The dividend history of the Company shows that in October, 1919, a dividend of 11 per cent. was declared and paid to all stockholders, that on December 16, 1920, a dividend of 25 per cent. was declared and paid to Class B stockholders, that on November 21, 1922, a dividend of 20 per cent. was declared and paid to all stockholders, and that on July 29, 1930, a dividend of 25 per cent. was declared and paid to all stockholders. It is conceded that, as a result of the cancellation of petitioner's indebtedness to the Company on December 23, 1925, he received $25,528.24. The only controversy is as to whether it constituted a gift, which was nontaxable, or a dividend, which was taxable. The petitioner claimed that it was a gift, and the Commissioner of Internal Revenue and the Board held that it was a dividend.

In addition to what has already been said, the record shows that the testimony of the directors who voted for the resolution cancelling the indebtedness was to the effect that

during 1925, due to the petitioner's domestic troubles, he had not been able to discharge his duties as President of the Company and it was thought that the action of the Board would relieve him of worry and better enable him to perform his duties. The petitioner's son, who was one of the directors, testified: "My father was, at that time, in very ill health, and I made the motion with the idea in mind of wiping the slate clean for him, as far as the company was concerned, so that, if he did continue to operate the business, he could start the year right, and with a clean slate. I made the motion with the idea in mind of bolstering up his morale and starting out the new year with a clean slate." All of the directors in their testimony agreed that there was no previous understanding with the petitioner that he should be relieved of his indebtedness to the Company.

Mr. Muehle, auditor and a director of the Company, stated that he voted for the resolution because, "owing to the heavy burdens which Mr. Fitch had, I thought it a good idea to clean up this indebtedness to him in the event that he would not operate the business the next year." It was shown, on the cross-examination of Mr. Muehle, that in a letter dated June 15, 1928, which he had written on behalf of the petitioner, apparently to the Commissioner of Internal Revenue, he had said, in explaining the action of the Board: "The explanation the members of the board that were present at the meeting give for their action is that, owing to the fact that the corporation made a nice profit for the year 1925, solely through my personal efforts, and, since the corporation paid the tax on the profits made, they took it upon themselves to cancel my notes in the amount of $37,500, for my credit balance of $11,971.76, or a difference of $25,528.24, which they charged to surplus; this is the amount now that your examiner contends is a distribution of profits to me, and that I should be taxed the surtax on this amount for the year 1925."

In a letter to the Commissioner dated March 23, 1929, Mr. Muehle said, referring to the resolution of the Board: "The Board of Directors no doubt had in mind these facts [payment of additional salary for 1925] and that it was not their intention to pay the president any more salary other than the additional $24,000.00, also the minutes of the directors' meeting clearly shows what transpired at the meeting when resolutions were passed to cancel this obligation of F. W. Fitch to the corporation, it was without consideration and merely a desire to benefit the creditor to this extent, having paid him in cash the additional salary which they thought he was entitled to in view of the fair profits the company had made that year."

It will thus be seen that the exact motive which prompted the directors to cancel petitioner's indebtedness is not made entirely clear.

Section 213 of the Revenue Act of 1926, c. 27, 44 Stat. 9, 23, 24 (26 USCA § 954), requires the inclusion of "dividends" in gross income to be taxed, and excludes "the value of property acquired by gift." Section 201 (a) of the act (26 USCA § 932 (a) defines "dividend" as "any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913." Section 201 (b) of the act (26 USCA § 932 (b) provides that "every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits."

Under Regulations 69 (promulgated under the Revenue Act of 1926), art. 1541, dividends comprise any distribution in the ordinary course of business, even though extraordinary in amount, made by a corporation to its shareholders out of its earnings or profits accumulated since February 28, 1913.

A "gift" is ordinarily defined as a voluntary transfer of property by one to another without any consideration or compensation. Blair v. Rosseter (C. C. A. 9) 33 F.(2d) 286; Noel v. Parrott (C. C. A. 4) 15 F.(2d) 669, 671. "Although it is held that the motive accompanying a gift is not material, gifts usually proceed from the generosity of the giver; and, where there is any doubt as to the nature of the transaction, the absence of such motive is a pertinent circumstance for consideration." Noel v. Parrott (C. C. A. 4) supra.

"That only is a gift which is purely such, not intended as a return of value or made because of any intent to repay another what is his due, but bestowed only because of personal affection or regard or pity, or from general motives of philanthropy or charity." Bass v. Hawley (C. C. A. 5) 62 F.(2d) 721, 723.

The Commissioner was of the opinion that the forgiveness of the petitioner's indebtedness was more nearly a dividend than a gift. His ruling has the presumption of correctness, and the petitioner has the burden of proving it to be wrong. Wickwire v. Reinecke, 275 U. S. 101, 105, 48 S. Ct. 43, 72 L. Ed. 184; Jones v. Commissioner (C. C.

A. 7) 38 F.(2d) 550, 552; Welch v. Helvering, 290 U. S. 111, 115, 54 S. Ct. 8, 78 L. Ed. 212.

In support of his contention that this was a gift, the petitioner points out that no other stockholder received any distribution, that the action of the Board was not similar to its action in declaring other dividends nor in accordance with the by-laws of the company, that there is no testimony that it was intended to be a dividend, and that all the testimony indicates that it was not so intended.

While the form of the transaction is of assistance in determining whether the petitioner received a gift, we are not concerned with the regularity of the action of the Board or what the rights of other stockholders might be in case of irregularity, but are concerned only with the taxability or nontaxability of what the petitioner received as a result of the Board's action. It is what was done, and not how it was done, which is determinative of the question before us. A dividend masquerading as a gift would still be taxable, while a gift, even though disguised as a dividend, would not be. Superficially, at least, the forgiveness of the petitioner's indebtedness has the earmarks of a gift, but the facts and circumstances surrounding it are not entirely consistent with that hypothesis. There were accumulated earnings before the divorced wife of the petitioner acquired her stock. These earnings were attributable to petitioner's efforts and capital. He could have distributed them to himself, but had not done so. On December 17, 1925, his former wife became the owner of a substantial proportion of the stock of the Company. Less that one week after this, the petitioner received from the Company $24,000 additional salary for the year in which he had been inactive, and, in addition, he received the cancellation of his indebtedness. Moreover, so far as we are advised, this Company was engaged in the business of making money and not making gifts. The directors were without authority to give away the Company's assets, and the assumption would be that they had no intention of violating their trust. Noel v. Parrott (C. C. A. 4) 15 F.(2d) 669, 671, supra. The circumstances might well give rise to an inference, in the absence of a showing that Mrs. Fitch or any other stockholder made any objection to this distribution, that it was for the purpose of adjusting the relative interests of the petitioner and his former wife in the assets of the Company. However that may be, it is our conclusion that the evidence does not compel a finding that the petitioner received a pure gift from the corporation.

We think that the Commissioner and the Board were justified in concluding that what the petitioner received he received as a stockholder of the Company by way of a distribution of profits which constituted a dividend as defined by the Revenue Act. It seems more probable that the action of the Board was attributable to the petitioner's ownership of stock than to a sudden generous impulse of the board of directors.

The order of the Board is affirmed.