**WAGGAMAN v. HELVERING (two cases).\***

**Nos. 6337, 6338.**

United States Court of Appeals for the District of Columbia.

Argued March 4, 1935.

Decided May 13, 1935.

Motion Denied July 29, 1935.

Meredith M. Daubin, of Washington, D. C., for petitioners.

Frank J. Wideman, J. Louis Monarch, Berryman Green, Robert H. Jackson, W. R. Lansford, and Sewall Key, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

Appeals from the United States Board of Tax Appeals.

The issues in these appeals are identical. They were consolidated at the hearing before the Board, and likewise have been consolidated in this court.

The questions at issue are (1) whether the petitioners became indebted for income taxes under section 115 (a) of the Revenue Act of 1928 (26 USCA § 2115 (a), for dividends alleged to have been distributed to them as stockholders of a corporation; and (2) whether, if such taxes actually accrued, their collection is barred by limitations under sections 275 and 276 of the same act (26 USCA §§ 2275, 2276). We will consider these questions in the order just mentioned.

The following sections of the Revenue Act of 1928, supra, are involved:

"Sec. 115. *Distributions by Corporations.*

(a) *Definition of Dividend.* The term 'dividend' when used in this title * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913."

"Sec. 275. *Period of Limitation Upon Assessment and Collection.*

"Except as provided in section 276 [section 2276].—

"(a) *General Rule.* The amount of income taxes imposed by this title shall be assessed within two years after the return

*Writ of certiorari denied 56 S. Ct. 139, 80 L. Ed. —.

was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period."

"Sec. 276. *Same—Exceptions.* * * *

"(b) *Waivers.* Where before the expiration of the time prescribed in section 275 [section 2275] for the assessment of the tax, both the Commissioner and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon."

It appears that on August 1, 1909, John F. Waggaman by deed of trust transferred his entire estate to Henry E. Waggaman and John W. Brawner, as trustees, for the equal benefit of his three sons, Henry E. Waggaman, Floyd P. Waggaman, and Ennalls Waggaman, the latter two being the petitioners in this case. The trust was to terminate ten years after the death of the grantor. It provided that the trustees should pay to the grantor $1,000 per month and to each of the three sons $150 per month until grantor's death, after which grantor's widow should be paid $500 per month and the three sons each $200 per month until the termination of the trust. The trust property consisted of improved and unimproved real estate, trust notes, and corporate securities. Henry E. Waggaman, the eldest son and trustee, died August 25, 1909; his widow, Viola R. Waggaman, by the terms of the trust succeeded to his interest; thereafter John W. Brawner acted as the sole trustee of the trust estate.

The grantor, John F. Waggaman, died on May 18, 1919, and his widow died August 26, 1926. From time to time Brawner, as trustee, in addition to the regular income provided in the deed of trust, made various advancements to the three beneficiaries from the principal of the trust or its accumulations. By February 1, 1924, the sums thus advanced amounted to, Floyd P. Waggaman $42,-934.65, and to Ennalls Waggaman $42,-570.73. There was no specific authority in the deed of trust authorizing the trustee to make such advances, and in order to adjust his accounts for settlement purposes the trustee required petitioners to give their promissory notes to him representing the amounts thus advanced, and these notes were carried by the trustee as assets of the trust estate. The petitioners did not expect that they would ever be called upon to pay the notes, but believed that they were merely receiving in advance part of what would be distributed to them upon the termination of the trust.

It appears that Floyd P. Waggaman and the trustee, John W. Brawner, had been in the real estate business as partners in Washington, D. C., for many years, and in January, 1920, their business was incorporated under the laws of Virginia by the name of "Waggaman and Brawner, Inc." Ennalls Waggaman also became a stockholder in the corporation, and Brawner and the Waggamans practically became the sole owners, officers, and directors of the corporation.

Afterwards, to wit, on January 3, 1924, the directors and stockholders of the corporation passed a resolution authorizing its officers to purchase the assets of the Waggaman trust estate, and provided for the payment thereof by increasing the capital stock of the corporation to $1,-000,000.

On January 28, 1924, the trustee, Brawner, submitted to the corporation a written proposition by which he offered to sell to it all of the assets of the Waggaman trust estate, for which the corporation was to pay by a transfer to the trustee of $800,000 of its capital stock, and to assume all of its liabilities. A list of the assets and liabilities of the trust estate was attached to the offer and was referred to therein. The attached list showed the net value of the assets to be $800,000. The list of assets included the aforesaid promissory notes of petitioners for the respective sums of $42,-934.65 and $42,570.73.

Thereafter on February 1, 1924, the trustee, Brawner, executed a bill of sale to the corporation conveying all of the trust property to it. The bill of sale contained an itemized statement of the trust estate's assets and liabilities, showing among the notes receivable the notes of petitioners Floyd P. Waggaman for $42,-934.65, and Ennalls Waggaman for $42,-570.73. This bill of sale was approved by all of the parties. These notes or renewals thereof were carried as assets of the corporation until May 25, 1928, and in addition thereto notes for interest were

executed to the corporation as follows: Floyd P. Waggaman for $4,874.57; Ennalls Waggaman for $7,905.66.

The Waggaman trust terminated May 18, 1928, ten years after the death of the grantor, and the trust property which had been converted as aforesaid into 8,000 shares of stock in the corporation was equally distributed in accordance with the terms of the trust among the three beneficiaries. The petitioners each received a full one-third of the stock without deduction for the advances theretofore made. The question then arose as to what disposition should be made of the notes, and on May 25, 1928, the board of directors of the corporation passed a resolution reading in part as follows:

"That the treasurer be, and he is hereby, authorized to cancel the following notes of Floyd P. and Ennalls Waggaman held by the company and to make them a gift of the cancelled notes, which represent advances made by the estate of John F. Waggaman and inadvertently carried into the assets of the company when the corporation of Waggaman & Brawner, Inc., purchased the assets of the John F. Waggaman estate and issued therefor stock in the said corporation.

"That the treasurer be and he is hereby instructed to notify Mr. Floyd P. Waggaman, at Cannes, France, and Major Ennalls Waggaman, at Danbury, Connecticut, that the debt is forgiven and cancelled and return to them the said notes:

"Note of Floyd P. Waggaman, Jan. 31, 1926 $43,280.47
"Note of Floyd P. Waggaman, Jan. 31, 1926   4,874.57
"Note of Ennalls Waggaman, Oct. 1, 1927..  42,570.73
"Note of Ennalls Waggaman, Oct. 1, 1927..   7,905.66"

Subsequently all of the stockholders of the corporation ratified in writing this action of the board of directors. The notes were then cancelled and returned to the petitioners. At the time of this transaction the corporation possessed a surplus and undivided profits account of $210,991.13, and the notes of the petitioners amounting to $98,631.43 were debited against the surplus account.

Upon the foregoing facts the Board of Tax Appeals held that the cancellation and delivery of the notes to petitioners must be considered as a taxable dividend distributed to them as stockholders out of the earnings or profits of the corporation within the purview of the statutes above quoted.

The Board accordingly affirmed the assessment made by the Commissioner.

■ We think the decision of the Board is correct. When the promissory notes were executed by petitioners and delivered to Brawner as trustee, they were considered and treated by all of the parties as assets of the trust estate. Afterwards they became assets of the corporation of which the petitioners were stockholders. When the Waggaman trust estate was settled and the 8,000 shares of stock in the corporation were equally divided among the beneficiaries, the promissory notes of the petitioners which had been and remained assets of the corporation were charged off against the surplus of the corporation and returned to the petitioners. By this means the petitioners were released from their obligation to the corporation upon the notes and received the same benefit as if cash in the same amount had been paid to them from the surplus of the corporation. The statute provides that a dividend may be paid by a corporation either in money or property, and it cannot be denied that the return of the notes to the petitioners in lieu of the payment of an equal amount of cash to them was a dividend within this provision. It was a "distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913." The unmistakable character of the transaction cannot be changed by the use of terms or phraseology tending to give it a different construction.

In Hadley v. Commissioner, 59 App. D. C. 139, 36 F.(2d) 543, 544, we said: "It is settled law that the division of profits of a corporation among its stockholders amounts to a constructive dividend whether it is intended by the directors or stockholders to constitute a dividend or not. * * * Any distribution by the company to its shareholders, out of earnings or profits accumulated since February 28, 1913, was a dividend within the meaning of section 201 (a) of the Revenue Act."

In Lincoln Nat. Bank v. Burnet, 61 App. D. C. 54, 63 F.(2d) 131, 133, we said: "The character of the distribution as a division of profits was not changed by the manner in which it was accomplished, nor by the personal motives which induced the respective stockholders or di-

rectors to approve of such action, for it nevertheless remained in contemplation of law a distribution of dividends. It was made from the earnings or profits of the distributing corporation, and was divided among the stockholders of the distributing company in such proportion as was satisfactory to its directors and stockholders." See, also, Christopher v. Burnet, 60 App. D. C. 365, 55 F.(2d) 527; Faris v. Helvering (C. C. A.) 71 F.(2d) 610; Levey v. Helvering, 62 App. D. C. 354, 68 F.(2d) 401; Fitch v. Helvering (C. C. A.) 70 F.(2d) 583.

The petitioners rely on Taplin v. Commissioner (C. C. A.) 41 F.(2d) 454 and Commissioner v. Van Vorst (C. C. A.) 59 F.(2d) 677, but we think those cases are not apposite. The corporation in these cases sold real estate to its principal stockholder; the price paid by the stockholder was less than the actual value of the property; but the court held that the transaction was an actual sale of the property by the corporation to the stockholder, and that the difference between the price paid and the actual value of the property was not in fact a dividend.

■ In respect to the limitations which the petitioners alleged, it was found by the Board upon evidence before it that the income tax returns of petitioners for the taxable year were stamped as being filed March 12, 1929, and that on both was written in longhand "Waiver 12/31/31," and attached to each return by metallic fasteners is a Form 872 dated February 16, 1931, "Consent fixing period of limitation upon assessment of income and profit tax," by which the period of limitation was extended to December 31, 1931. The Board found that these written consents were signed by the petitioners and also by the Commissioner of Internal Revenue; and that they came from proper governmental custody, and were introduced in evidence by petitioners' counsel as part of the returns without objection. The Board therefore accepted them as part of the record. The deficiency notices were mailed November 13, 1931, which accordingly was within the extended period and was in time. The plea of limitations was therefore rightly denied by the Board. In Wausau Sulphate Fibre Co. v. Commissioner (C. C. A.) 61 F.(2d) 879, 880, it is said:

"In the files of the case there were several original papers of the taxpayer, including the petition itself, whereon the signature of the taxpayer's president appears. These files were of course before the Board, which then had opportunity for comparison of the signature thereon with those on the waivers purporting to be by the same president. When the Board found, as it did, that the taxpayer made the waivers, it had before it the evidence which was afforded by these signatures. Such comparisons with the signature on documents admittedly in the files may properly be made by the trier of the facts.",

■ Citing 37 Stat. 683 (28 USCA § 638); Citizens' Bank & Trust Co. of Middlesboro, Ky., v. Allen (C. C. A.) 43 F.(2d) 549; Smythe v. New Providence Tp. (C. C. A.) 263 F. 481.

The "consents" were regular in form, were in the possession of the proper government bureau, and were presumptively genuine. They were therefore admissible in evidence. Stern Bros. & Co. v. Burnet (C. C. A.) 51 F.(2d) 1042; Concrete Engineering Co. v. Commissioner (C. C. A.) 58 F.(2d) 566.

Accordingly, in each case we agree with the decision of the Board of Tax Appeals and it is hereby affirmed.