## ALLEN et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 3600.

Circuit Court of Appeals, First Circuit.

Feb. 5, 1941.

George D. Brabson, of Washington, D. C. (D. H. Blair, of Washington, D. C., on the brief), for petitioners.

Robert N. Anderson, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to Atty. Gen., on the brief), for the Commissioner.

Before MAGRUDER and MAHONEY, Circuit Judges, and SWEENEY, District Judge.

MAGRUDER, Circuit Judge.

This is a consolidation of five petitions for review of decisions of the Board of Tax Appeals. Four of the cases, involving deficiency assessments of personal income taxes, present the same question. In one the assessment is against Philip Allen and wife for the calendar year 1934; in another against Philip Allen alone for 1935 and 1936; in the third the assessment is against W. Gordon Reed and wife for 1935; and in the fourth against Reed alone for 1936. The fifth case, involving deficiency assessments against Allen & Reed, Inc., for the calendar years 1934 and 1936, has been virtually abandoned by the petitioner. In all five cases the Board upheld the Commissioner.

It appears from a confusing and unsatisfactory record that the real dispute is on a question of fact. Before the Board, the Commissioner's determination was presumptively correct and the petitioners had the burden of proving it wrong. Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212. The Board concluded that the petitioners had not sustained the burden of establishing error in the Commissioner's determination that Messrs. Allen and Reed should be charged with the receipt of dividends from Allen & Reed, Inc., when certain debit balances in the individual accounts of Allen and of Reed on the books of Allen & Reed, Inc., at the end of the years 1928, 1929 and 1930 were charged off in 1934, 1935 and 1936, respectively, by appropriate entries in the books of the corporation. See Fitch v. Helvering, 8 Cir., 70 F.2d 583, 585. We have merely to say whether there was substantial evidence to sustain the Board's finding. Elmhurst Cemetery Co. v. Commissioner, 300 U.S. 37, 40, 57 S.Ct. 324, 81 L.Ed. 491. We think there was.

Allen & Reed, Inc., since its organization in 1902, has been engaged in business as a wholesale dealer in pipe fittings and steam supplies at Providence, Rhode Island. The entire common stock has at all times been owned in equal shares by Mr. Allen and his brother-in-law, Mr. Reed. They have been the officers and principal directors of the corporation from the beginning and at the present time are the only directors. They have devoted their time to the active management of the business, which has been conducted in an extremely informal manner.

Allen testified: "The corporation did not formally fix any definite or fixed sum as compensation for its officers. We had a definite policy, that when the year was finished and if we saw we had made any money and conditions were good, our salaries for the year would be determined accordingly."

The two officers each had an individual personal drawing account with the corporation, "under which each was privileged to withdraw at will, and in such sums as each found necessary up to the amount to which each was entitled as compensation, or up to the respective interest of each in the business". Thus the officers might well withdraw during a given year for their personal use sums in excess of the amount voted at the end of the year as their respective salaries for that year. Withdrawals by each officer during 1928, 1929 and 1930 exceeded the amounts credited to their individual drawing accounts. In the petitions for redetermination of deficiencies filed before the Board, it was stated: "As a matter of accounting practice in order to balance the accounts of the corporation with said officers, the said withdrawals were debited against the respective officers, and these accounts were treated in the nature of accounts receivable."

As found by the Board, the following table shows the excess of withdrawals made by the officers from their personal accounts with the corporation over the credits to those accounts for the years 1928, 1929 and 1930:

| Year | Allen | Reed | Total |
|------|-------|------|-------|
| 1928 | $14,212.43 | $ 4,598.85 | $18,811.28 |
| 1929 | 22,610.71 | 20,899.24 | 43,509.95 |
| 1930 | 18,523.32 | 30,066.78 | 48,590.10 |
| Total | $55,346.46 | $55,564.87 | |

The corporation, by appropriate entries on its books at the close of 1934, charged off the above excess for 1928 in the total amount of $18,811.28; at the close of 1935 charged off the above excess for 1929 in the total amount of $43,509.95, and at the close of 1936 charged off the above excess for 1930 in the total amount of $48,590.10. This resulted in a corresponding reduction in the item of surplus in the corporate balance sheets.

At the outset the petitioners seem to have contended that the salaries formally voted at the end of each year were not understood to represent the entire compensation to be received by the officers; and that the sums withdrawn by Allen and Reed in those years were treated as current compensation and reported as such on their individual tax returns. The Commissioner's deficiency notice recites: "It was stated by your representative at the conference held on February 16, 1938 that each of the stockholders had reported the amounts withdrawn, in the year in which received. However, no evidence has been submitted in substantiation of this contention." This theory was adhered to in the original petitions filed with the Board. The petitioners stated that it was not anticipated that the sums so withdrawn by the two officers in 1928, 1929 and 1930 would be returned or repaid by them to the corporation "unless the two officers saw fit to make additional capital contributions to the business, or unless the business required it". Further:

"(h) Petitioners aver that the said sums of money withdrawn by the two officers represented a portion of the compensation to which they were entitled as officers and managers of the corporation. The salaries fixed by resolution of the corporation in the beginning were not understood to represent the entire compensation to be received by such officers, but it was understood from the beginning that their compensation was to vary with their individual requirements from year to year, with the condition of the corporation, and with the policies which they as officers of the corporation might fix."

At the trial before the Board, petitioners advanced a different explanation of these withdrawals. Counsel stated that when he drew the petitions he was under a misapprehension as to the nature of these accounts receivable. By permission of the Board the first sentence of paragraph (h) of the petition, above quoted, was amended to aver that the sums of money withdrawn by the two officers "represented in part the compensation to which they were entitled as officers and managers of the corporation, and in part constituted withdrawals of funds invested by them in joint ventures for and on behalf of the corporation."

Allen was the sole witness. We find nowhere in his testimony an explicit denial that the officers may have withdrawn for their personal uses during the years in question sums in excess of the salaries credited to them for those years. He testified in general terms to a course of business affecting at least in part the withdrawals through the individual drawing accounts of the officers. These two accounts were used, he said, to withdraw funds which the officers invested or placed through a joint account in various outside enterprises on behalf of Allen & Reed, Inc. Such extra-corporate enterprises consisted in the main of financing the building or operation of outside companies, through which Allen & Reed, Inc., hoped to profit by making large sales of pipe and other equipment to the debtor companies. When construction work was thus financed, the bills for the work done would be sent by the contractor to Allen & Reed, Inc., which would directly pay the same and charge the amounts thereof as withdrawals against the drawing accounts of the two officers. In other instances, the financing would be done by the purchase of bonds or stock of the outside companies.

In a general way Allen testified that these enterprises were undertaken by the officers on behalf of Allen & Reed, Inc.; that the returns therefrom went back to the corporation, including the profits, if any. After construction work had been financed, when payments came back from the borrower in the form of checks payable to Allen & Reed, Inc., such payments would first be applied to pay for the pipes and fittings furnished by the corporation, and as the money successively came in and those accounts were paid in full, it would next be credited to the drawing accounts of Allen and Reed.

■ From this description of the course of business it is easy to see that the financing operations conduced to the benefit of Allen & Reed, Inc., to the extent that the corporation was enabled to profit by the sale of pipes and fittings. But this testimony is not inconsistent with an assumption that the financing of these outside en-

terprises was done on the joint extra-corporate account of the two officers. In other words, as the books were kept the withdrawals were charged against the officers. When repayments by the financed companies began to come in they went into the treasury of Allen & Reed, Inc., and corresponding credits were entered in the drawing accounts of the officers in extinguishment of the debits representing the withdrawals. That would be merely the machinery by which the officers reimbursed the corporation for the excess withdrawals. The fact that in this sense the proceeds of these extra-corporate transactions "went back into Allen & Reed, Inc.", does not establish that the officers went into the financing transactions merely as agents for the corporation and not individually as joint adventurers. Indeed, at another place Mr. Allen testified:

"Mr. Reed at various times had business which I had nothing to do with, and I had business that Mr. Reed had nothing to do with. Together, however, he and I had the business of Allen & Reed, Inc., as a corporation, and we also had a joint account arrangement which you might have called a *partnership* or something analogous to that, with which or by which or *through which we individually did things which the corporation could not very well do.*" (Italics ours.)

In connection with one of the specific transactions testified to, a profit of $2,600 was realized on certain bonds. This profit was reported by the officers on their individual income tax returns. Allen's explanation of this was unconvincing to the Board. He said:

"The profit went back directly into Allen & Reed, Inc. $1,300 of that profit was put into my income tax return and $1,300 was put into Mr. Reed's tax return, and we paid a tax on it. Of course Allen & Reed, Inc., made a profit on it of $2,600 because they got back that much more than they put into it, and they paid income tax on that profit. At least I suppose it might have worked that way on the books, that they paid a tax on it. We were not very particular about the taxes in those days. The rate was low and the amount involved was small."

Further, Allen testified that the joint accounts "of the several enterprises which Mr. Reed and I entered into on behalf of the corporation have certain assets in them. Together not in the corporate sense, we own some assets. The general nature of those assets is cash in the bank, some Lambert bonds lying around which we have not been able to get our money for yet, some stock in some oil companies, some water works franchises, and other items of that kind. * * * If some of the other items come through, the proceeds would go right into the corporate funds the same as before, of Allen & Reed, Inc." Yet these assets in the so-called joint account do not appear to be carried as assets in the balance sheets of Allen & Reed, Inc., as they naturally would be if they had been acquired on the corporation's account. Indeed, as the Board points out in respect to the bonds of the Lambert Oil & Gas Company, Allen claimed a deduction of $1,350 on his individual income tax return for 1935 on the ground that the bonds had become worthless during that year.

In his testimony Allen gave only four specific instances of financing outside companies in the manner described. All of them were entered into prior to 1928. At least two of them were closed out prior to 1928 and thus would not be reflected in the excess withdrawals of Allen and Reed during the years now in question. In a third case, described as "one of the earlier transactions, before 1928", Allen and Reed withdrew $30,000 from the corporation through their drawing accounts and purchased stock of the Atlantic Sugar Refining Company. In 1931 or 1932 this stock was sold at a loss and the proceeds "went back into the corporation's account". It does not appear that this transaction had any bearing on the excess withdrawals by the officers in 1928, 1929 or 1930. The fourth transaction relates to a loan of $25,000 to the Lambert Oil & Gas Company, apparently some time prior to 1928. Part of this loan has been repaid, at some time undisclosed by the record. It does not appear that any of the debits or credits in the drawing account of the officers for 1928, 1929 or 1930 had any bearing on this transaction. Further, Allen testified that while many of such financing transactions were entered into prior to 1928, "I know we have not undertaken any of those things since 1929 in any case. It was going along toward 1929 and 1928 when we were pulling in our oars in all directions and not reaching out".

■ As an explanation for failure to be more specific in accounting for the debit balances for the years 1928, 1929 and 1930,

petitioners offer the fact that the books and records of Allen & Reed, Inc., were to a large extent destroyed or rendered illegible by the hurricane and accompanying flood in 1938. But though this unfortunate fact would dispel any unfavorable inference which might be drawn from failure to produce the books and records, it does not relieve petitioners of the burden of establishing their claim by convincing affirmative evidence. Burnet v. Houston, 283 U.S. 223, 228, 51 S.Ct. 413, 75 L.Ed. 991.

■ Upon consideration of the entire record the Board found itself unable to conclude "that any of the funds withdrawn by Allen and Reed in 1928, 1929, and 1930 were invested by them for the benefit of the corporation." We cannot say that the Board erred in this respect. It is true that book entries, while of evidential value, are not conclusive of tax liability. Helvering v. Midland Insurance Co., 300 U.S. 216, 223, 57 S.Ct. 423, 81 L.Ed. 612, 108 A.L.R. 436. But here it was not satisfactorily established that the debit balances standing in the drawing accounts of the two officers for those years were anything other than what they purported to be on the records, namely, true accounts receivable. Curiously enough, Allen & Reed, Inc., after charging off these debit balances in 1934, 1935 and 1936, sought in its corporate income tax returns for those years to deduct such amounts as debts ascertained to be worthless. The Commissioner denied the deductions, and the petition for review now before us filed by Allen & Reed, Inc., challenged the correctness of this denial. As stated previously, this petition has been abandoned. The Board observed: "The charge-off at the end of six years and the claim of a deduction for bad debts on those accounts is some evidence to show that they were regarded as true accounts receivable giving rise to debts."

■■ Assuming that the debit balances in the drawing accounts of Allen and Reed for 1928, 1929 and 1930 are to be treated as debts owing by them to the corporation, was the Commissioner justified in his ruling that the charge-off of these debts in 1934, 1935 and 1936 constituted distributions of dividends to the two stockholders in the latter years? As to this, there is no serious question. It is true that the corporation during its whole history never formally declared any dividends eo nomine; but this is not controlling. Waggaman v. Helvering, 64 App.D.C. 371, 78 F.2d 721,

723, certiorari denied, 296 U.S. 618, 56 S. Ct. 139, 80 L.Ed. 439. The corporation had a large surplus, accumulated out of earnings or profits, available for the distribution of dividends. It is settled that withdrawals by stockholders giving rise to debts, under the circumstances here disclosed, are taxable to the stockholders as dividends in the year in which the indebtedness is cancelled by the corporation. Cohen v. Commissioner, 5 Cir., 77 F.2d 184, certiorari denied, 296 U.S. 610, 56 S.Ct. 129, 80 L.Ed. 433; Fitch v. Helvering, 8 Cir., 70 F.2d 583; Hudson v. Commissioner, 6 Cir., 99 F.2d 630, certiorari denied, 306 U.S. 644, 59 S.Ct. 584, 83 L.Ed. 1044; Waggaman v. Helvering, 64 App.D.C. 371, 78 F. 2d 721, certiorari denied, 296 U.S. 618, 56 S.Ct. 139, 80 L.Ed. 439; Wiese v. Commissioner, 8 Cir., 93 F.2d 921, certiorari denied, 304 U.S. 562, 58 S.Ct. 944, 82 L.Ed. 1529, rehearing denied, 304 U.S. 589, 58 S.Ct. 1045, 82 L.Ed. 1549.

The decisions of the Board of Tax Appeals are affirmed.