OPINION. Rice, Judge: Section 115 (a) of the Internal Revenue Code defines a dividend as any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year. Respondent contends that petitioner, who was president of the company, siphoned off its earnings for his pleasure and benefit, and that such withdrawals of earnings constituted dividends within the meaning of section 115 (a) of the Code and are taxable to him. Respondent takes the position that petitioner was in complete control of the company, dictated its policies, and otherwise used it for his personal convenience. We examine first the question of whether petitioner had complete control of and dictated the policies of the company. Our findings show that he was not the majority stockholder at any time material hereto, owning only 40 per cent of the capital stock. The company’s operations were conducted outside of the office by petitioner and inside the office by Yaughters, who also owned 40 per cent of the capital stock. Both Yaughters and petitioner testified that policy matters were settled and decided after discussions between them. Yaughters recognized and respected petitioner’s ability and experience as a timber and lumber man, but such recognition and respect are not the equivalent of complete control of the company or dictation of its policies. These facts indicate cooperation in the conduct of the business, rather than control and dictation by the petitioner. In onr opinion the record shows, and we have found, that Vaughters constantly objected over a period of years to petitioner’s practice of excessive withdrawals. Time and again he secured an agreement from petitioner that he would stop withdrawals in excess of his salary, bonus, and traveling expenses, only to have petitioner break his promise and renew his excessive withdrawals. Vaughters’ testimony, a portion of which is hereinafter set forth, reveals his deep concern over petitioner’s practice of withdrawing large sums of cash from the company and the turmoil in his own mind as to what he should do to solve the problem. The Court: He didn’t have control of the other stockholders, did he? The witness: No. The Court: Why didn’t the rest of the stockholders get together and stop it? The witness: Well, that is a thing that is hard for me to explain. A person has got to get into the circumstances, the fact that you have got to go ahead from then on here, and when you 7cnow that siolcness is there, you try to get along the best you can with it without getting out of hounds. Now, that is all I can say. That is the only way I can explain it, but I know in my own mind what it is. I know it shouldn’t be countenanced, I will agree with you, but if you are put in my position you might see it differently. [Emphasis added.] We cannot agree that these facts and the testimony of record establish complete control of the company by petitioner or dictation of its policies. The facts indicate tolerance on the part of Vaughters and an unwillingness to force the matter to an issue until long after the taxable year. The important fact is not petitioner’s measure of control over the company, but whether the withdrawals were in fact loans at the time they were paid out. Wiese v. Commissioner (C. A. 8, 1938), 93 F. 2d 921, 923, certiorari denied 304 U. S. 562, rehearing denied 304 U. S. 589 (1938). The character of the withdrawals depends upon petitioner’s intent and whether he took the company’s money for permanent use in lieu of dividends or whether he was then only borrowing. Id. In this case we have affirmative statements from witnesses, plus documentary evidence, all of which is corroborated by subsequent events, that petitioner’s withdrawals were intended to be loans. There was no agreement, tacit or otherwise, among the company’s stockholders authorizing petitioner’s withdrawals, a fact which distinguishes this case from cases like Regensburg v. Commissioner (C. A. 2, 1944) 144 F. 2d 41, certiorari denied 323 U. S. 783 (1944); Ben R. Meyer, 45 B. T. A. 228 (1941); and Roy J. Kinnear, 36 B. T. A. 153 (1937). Nor do we have a situation where withdrawals during prior years were canceled out by corporate resolution in the taxable year, as in Cohen v. Commissioner (C. A. 6, 1935), 77 F. 2d 184, certiorari denied 296 U. S. 610 (1935), or were charged off by appropriate entries in the corporate books of account, as in Allen v. Commissioner (C. A. 1, 1941), 117 F. 2d 364, and Cohen v. Commissioner (C. A. 6, 1935), 77 F. 2d 184, certiorari denied 296 U. S. 610 (1935). Moreover, the facts show that petitioner considered the withdrawals loans and was constantly applying his salary, bonus, and traveling expense allowance against his withdrawals. While it must be admitted that his debit balances increased steadily after December 31, 1941, it must also be recognized that thousands of dollars were credited annually to his personal account in partial satisfaction of his withdrawals. If the company and the stockholders had intended that petitioner’s withdrawals were permanent appropriations of corporate profits, there would be no point in his repaying almost $75,000 during the 3-year period ending with the taxable year. The manner in which the withdrawals were made, the book entries reflecting the withdrawals, the repayments made on account, and the uncontradicted testimony of petitioner and Yaughters that the withdrawals were intended and were considered to be loans, strongly support petitioner’s contention that he was only borrowing from the company. Furthermore, we have in this case the corroborating facts that subsequent to the taxable year Yaughters forced the issue, the company acquired petitioner’s stock as a pledge for his indebtedness to it, and thereafter obtained judgment against petitioner and established a lien against his stock, which was to be sold subsequent to the date of the hearing of this cause in satisfaction of the judgment. In view of the foregoing, we hold that petitioner’s excessive withdrawals during the taxable year were loans and were not dividends within the meaning of section 115 (a) of the Code. Rollin C. Reynolds, 44 B. T. A. 342 (1941) and cases there cited. In so holding we have carefully considered all the facts and circumstances herein, including the fact that no notes were given or interest charged on the indebtedness to the company or the indebtedness owed by the company, and that no dividends were declared by the company during or prior to the taxable year. Our holding on the first issue disposes of respondent’s second issue with respect to capital gain, as our findings show that petitioner’s withdrawals and credits were treated the same by all parties during, prior, and subsequent to the taxable year. Disposition of these issues in favor of petitioner’s theory makes it unnecessary to consider his alternative contention. Decision will he entered for the petitioner.