G. Lester HASH, Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 7969.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 13, 1959.

Decided Dec. 15, 1959.

Oppie L. Hedrick, Beckley, W. Va., and Hobart Richey, Wheeling, W. Va., for petitioner.

Rita E. Hauser, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Harry Baum, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before SOBELOFF, Chief Judge, BOREMAN, Circuit Judge, and THOMSEN, District Judge.

THOMSEN, District Judge.

This case involves a deficiency in the individual income tax of G. Lester Hash (taxpayer) for the calendar year 1953. The deficiency resulted from the determination by the Commissioner that an amount of $12,284.97, credited in 1953 to taxpayer's personal account on the books of a corporation of which he was president, was taxable as a dividend constructively received by taxpayer in that year. The Tax Court sustained the Commissioner, T.C.Memo.1959—96, finding that the amount credited was income to taxpayer under secs. 22(a) and 115(a) of the Internal Revenue Code of 1939.[1]

Taxpayer resides in Beckley, W. Va. He is president and a stockholder of the Hash Furniture Company (the corporation), which was organized on May 1, 1946.[2] Before that date, the present stockholders had carried on as partners the business which was taken over by the corporation.

In 1944 and 1945, the partnership had made investments in the Harrisburg Broadcasting Company, another partnership. On May 1, 1946, an asset account, entitled "Investment in Affiliate (Harrisburg Broadcasting Co.)", showing a debit balance of $38,820.89, was set up on the books of the corporation. From

---

[1] Internal Revenue Code of 1939:

"§ 22. Gross income.

"(a) *General definition.*—'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *" (26 U.S.C., 1952 ed., Sec. 22)

"§ 115. Distributions by corporations.

"(a) *Definition of dividend.*—The term 'dividend' when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made * * *" (26 U.S.C., 1952 ed., Sec. 115).

[2] The stock ownership of the Hash Furniture Company during the year 1953 was as follows:

| Name | Number of Shares |
| --- | --- |
| G. Lester Hash | 1,110 |
| Rose Mary Hash and F. W. Mann, Trustees of G. Lester Hash Trust | 2,260 |
| G. Lester Hash and F. W. Mann, Trustees of Rose Mary Hash Trust | 2,260 |
| Rose Mary Hash and F. W. Mann, Trustees of Rosemary II Trust | 607 |
| G. Lester Hash and F. W. Mann, Trustees of Doris June Hash Trust | 607 |
| G. Lester Hash | 156 |

Rose Mary Hash is the former wife of petitioner, and Rosemary Hash and Doris June Hash are daughters of petitioner.

time to time various debits and credits were entered in this account on the books of the corporation, most of which are not explained in the evidence or by reference to the account itself. In 1948, the corporation reported income of $25,-690.27 from this investment, entered that amount as a debit to the investment account, and paid income tax thereon. As of April 30, 1950, the debit balance in this investment account, in the amount of $39,190.27, was written off by a charge to taxpayer's personal drawing account, so that, according to the books, taxpayer's obligation to pay the corporation $39,190.27 took the place of this "Investment in Affiliate" as an asset of the corporation.

At some time, whether before or after April 30, 1950, does not appear, and for reasons which do not appear in this record, the Commissioner determined that the $25,690.27 should properly have been treated as income to taxpayer in 1948 and not as income to the corporation. Taxpayer agreed to this determination in 1952 and paid the additional individual income tax for the year 1948 required thereby. The corporation, filed a claim for refund, and in August, 1953, received a refund in the principal amount of $12,284.97. After receipt of the refund, and during the year 1953, taxpayer's personal account on the books of the corporation was credited with $12,-284.97, reducing the debit balance of that account (i. e. taxpayer's indebtedness to the corporation) to $36,091.15. It is this credit which the Commissioner found taxable as a dividend to taxpayer in 1953.

It is stipulated that throughout the year 1953 the corporation had accumulated earnings and profits substantially in excess of $12,284.97.

■■■ It is well settled that corporate profits may be distributed other than by a formal dividend declaration. Regensburg v. Commissioner, 2 Cir., 144 F.2d 41, certiorari denied 323 U.S. 783, 65 S.Ct. 272, 89 L.Ed. 625; Helvering v. Gordon, 8 Cir., 87 F.2d 663; Paramount-Richards Theatres v. Commissioner, 5 Cir., 153 F.2d 602; cf. Wall v. United States, 4 Cir., 164 F.2d 462. If a stockholder derives economic benefit it is immaterial in what manner the distribution takes place. Lincoln Nat. Bank v. Burnet, 61 App.D.C. 354, 63 F.2d 131. This is true whether or not a dividend is intended by the directors, Waldheim v. Commissioner, 7 Cir., 244 F.2d 1, Hadley v. Commissioner, 59 App. D.C. 139, 36 F.2d 543, and whether or not the shareholder actually draws on the sums made available to him, Brooks v. Commissioner, 4 Cir., 35 F.2d 178. Cancellation by a corporation of a debt due from a stockholder has been held to constitute the receipt of a constructive dividend. Waggaman v. Helvering, 64 App. D.C. 371, 78 F.2d 721, certiorari denied 296 U.S. 618, 56 S.Ct. 139, 80 L.Ed 439; Hudson v. Commissioner, 6 Cir., 99 F.2d 630, certiorari denied 306 U.S. 644, 59 S.Ct. 584, 83 L.Ed. 1044; Wilson's Estate v. Commissioner, 5 Cir., 255 F.2d 702, affirming per curiam 27 T.C. 976.

Taxpayer argues that the credit of $12,284.97 to his personal account "was merely a bookkeeping entry, an erroneous one at that, from which [taxpayer] did not even receive any economic benefit". This argument is based upon taxpayer's contentions: that when the investment account in the amount of $39,-190.27, "including" the $25,690.27, was removed from the books of the corporation as an asset, it should have been charged to earned surplus, and that the entry showing a liability on taxpayer's part to repay that amount to the corporation was erroneous, at least to the extent of $25,690.27; that the tax refund of $12,284.97 should have been credited to earned surplus and not to taxpayer's personal account; and that the credit of $12,284.97 to taxpayer's account should be treated as a partial correction of the original error.

Taxpayer's argument is not supported by the record. The proper entry or entries which should have been made at the time the investment account was closed out and charged to the taxpayer depended upon the nature of the agree-

ment or understanding between taxpayer and the directors of the corporation, who represented all the stockholders. The record does not show what that agreement or understanding was. The investment account had been set up as an asset of the corporation, evidently because, as appears from taxpayer's petition, the "contributions" to the capital account of the Harrisburg Broadcasting Company had been made by checks of the Hash Furniture Company. The other stockholders have an interest in the question how the transactions should have been handled on the books of the corporation, and that question will not be decided here. It is sufficient for present purposes to say that we cannot find from the record in this case that the entry charging the entire amount of the investment account to taxpayer was erroneous.

It is probably true that the tax refund should have been credited to earned surplus in the first instance, and the "dividend" to taxpayer charged against earned surplus, but the net result of the one-step entry was the same as the net result of the two-step entry would have been. To constitute a dividend it is not required that the surplus account be charged; the receipt of economic benefit by the stockholder is all that is needed.

While it is true that bookkeeping entries are not determinative of tax liability, Helvering v. Midland Mut. Life Ins. Co., 300 U.S. 216, 57 S.Ct. 423, 81 L.Ed. 612, the credit of $12,284.97 to taxpayer's personal account in 1953 reduced *pro tanto* taxpayer's debt to the corporation.

As noted above, the evidence does not show that the transfer of the investment account as a debit to taxpayer's personal account was erroneous. Nor does the evidence show that the credit of $12,284.97 to taxpayer's account was intended as a partial correction of that entry. As the Tax Court said, taxpayer "has made no showing that the transaction in issue was not in fact ex-actly what the book entry showed it to be."

The $12,284.97 was properly included in taxpayer's income for 1953.

Affirmed.