RICHARD E. BUSCH, JR. AND JEAN N. BUSCH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; BUSCH CLINIC OF FORT WAYNE, INC., FORMERLY FT. WAYNE CHIROPRACTIC CLINIC, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Busch v. Commissioner
Docket Nos. 4498-79, 12822-80, 12823-80.
United States Tax Court
T.C. Memo 1983-98; 1983 Tax Ct. Memo LEXIS 689; 45 T.C.M. (CCH) 772; T.C.M. (RIA) 83098; February 14, 1983. Randall S. Goulding, for the petitioners. Elsie Hall, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: In these cases which have been consolidated, the Commissioner determined deficiencies in and an addition to petitioners' Federal income taxes as follows: Addition to
Taxable
tax under
Docket No.
Years
Deficiency
Section 6653(a) [1]
4498-79
1973
$3,509.56
1974
6,198.77
1975
5,753.96
12822-80
Ending: 9/30/76
1,713.04
[2] $85.65
12823-80
1976
6,497.22
*691 The issues for decision are: (1) Whether certain corporate distributions made to petitioner Richard E. Busch, Jr., (Dr. Busch) during the taxable years 1973, 1974 and 1975 by his wholly owned corporation, Busch Clinic of Fort Wayne, Inc., (the corporation) were taxable dividends or bona fide loans; and (2) whether $8,437.50 was contributed to the profit sharing trust of the corporation, so as to be deductible under section 404(a) on its return for the taxable year ended 1976 and, correspondingly, whether Dr. Busch contributed $8,437.50 to the profit sharing trust entitling him to a reduction of his notes payable to the corporation, or failing substantiation, such reduction reflected on the corporation's books was a forgiveness of indebtedness constituting a dividend. FINDINGS OF FACT Some of the facts in this consolidated case have been stipulated. The stipulation *692 of facts and stipulated exhibits are incorporated herein by this reference. Petitioners Richard E. Busch, Jr., and Jean N. Busch, docket Nos. 4498-79 and 12823-80, husband and wife, resided in Fort Wayne, Indiana, when they filed their joint Federal income tax returns for years 1973, 1974, 1975 and 1976 and when they filed their petition in this case. Jean N. Busch is a party herein solely by reason of filing joint Federal income tax returns with petitioner. The other petitioner, Busch Clinic of Fort Wayne, Inc., formerly Ft. Wayne Chiropractic Clinic, Inc., docket No. 12822-80, also maintained its corporate headquarters in Fort Wayne, Indiana, when its petition in this case was filed. All returns for the taxable years in issue were timely filed by petitioners Busch and the corporation with the Internal Revenue Service in Memphis, Tennessee. During all the years in issue, Dr. Busch was a chiropractic physician employed by the corporation. At the time of trial, Dr. Busch had been licensed in the State of Indiana for 13 years. Dr. Busch formed the corporation on September 29, 1970. The purpose of the corporation was to provide professional chiropractic care and services. *693 During all of the years in issue, Dr. Busch owned 100 percent of the stock of the corporation. He was also a director and president of the corporation. The retained earnings of the corporation as reflected on the U.S. Corporate Income Tax Returns, Forms 1120 are as follows: Fiscal Year Ending
Retained Earnings
September 30, 1973
$19,277.38
September 30, 1974
39,285.53
September 30, 1975
59,703.91
September 30, 1976
74,427.75
The corporation did not declare any dividends to its sole shareholder and Dr. and Mrs. Busch did not report any dividends on their returns for any of the taxable years in issue. The petitioner-corporation maintained an account designated "Notes Receivable - RE Busch" on its books and records. This account reflected advances and payments to Dr. Busch. Amounts of outstanding advances to Dr. Busch by the corporation were as follows: December 31, 1973
December 31, 1974
December 31, 1975
$11,358.78
$28,260.87
[3] $40,358.29
The outstanding balances of the withdrawals from the corporation as of December 31, 1973, 1974 and 1975 increased by $10,963.11, $16,902.09 and $12,097.42, respectively. *694 No interest was accrued, owed or paid to the corporation by Dr. Busch on the amounts advanced to him as reflected in the "Notes Receivable - RE Busch" account until October 30, 1976. This was six months after the revenue agent first contacted Dr. Busch regarding an audit. No collateral was given by Dr. Busch to the corporation to secure the advances recorded in the "Notes Receivable - RE Busch" account. The record book of the corporation did not contain any corporate resolutions authorizing the advances to Dr. Busch or establishing a ceiling on the amounts which could be advanced to Dr. Busch during the years in issue. In 1981, approximately one month before trial, Dr. Busch prepared and inserted into the corporate record book a Notice and Resolution authorizing and limiting the amounts of such advances. These documents were back-dated December 11, 1972. There were numerous small debit entries to the "Notes Receivable - RE Busch" account. Some of the debit entries were for payment of personal expenses, such as clothing and football tickets. Other debit entries related to the payment of mortgage expenses and the construction of the building housing the corporation (the *695 property). Title to this property was held in the names of petitioners Richard E. Busch, Jr., and Jean N. Busch. The property had two other tenants besides the petitioner-corporation. Dr. and Mrs. Busch reported the rental income and expenses on their individual returns. The property was never transferred to the corporation. The cost of the facility was about $265,000. The total amount of the borrowings until fully repaid in 1980 exceeded $300,000. No interest was paid until 1976, when Dr. Busch paid petitioner-corporation $5,806.53 as interest. A vast majority of the proceeds from the advances went to the cost of the new facility. Specific withdrawals applied to the building costs are not known. The balance was used by Dr. Busch for personal purposes. During the taxable years 1973, 1974 and 1975, 11 promissory demand notes were executed. None of these notes was interest bearing and none set forth a repayment schedule. While most of these notes are related to debit entries in the "Notes Receivable - RE Busch" account, there were many debit entries for substantial sums not covered by promissory notes. The credit entries to the "Notes Receivable - RE Busch" account consisted, *696 among other things, of small book entries for rentals collected from other tenants in Dr. Busch's building and deductions from his salary. Also credited to this account was $6,000 borrowed by Dr. Busch from the corporation's profit sharing trust. The sources of other amounts credited to this account were not established. The bookkeeper for the corporation erased figures on and rewrote a ledger page of the "Notes Receivable - RE Busch" account shortly before trial. In his statutory notice of deficiency, the Commissioner increased Dr. and Mrs. Busch's taxable income based on the net increases in the loan account as follows: 1973
1974
1975
$10,963.11
$16,902.09
$12,097.42
On September 30, 1973, the corporation instituted a profit sharing plan for the benefit of its employees called the "Fort Wayne Chiropractice Clinic, Inc. Profit Sharing Plan" (the plan). The corporate minutes of September 28, 1973, reflect an intention to qualify the plan under section 401 and to make contributions to the plan deductible under section 404(a). On December 10, 1976, Dr. Busch transferred to the Profit Sharing Trust account stock valued at $8,437.50. He did so on behalf *697 of the corporation. The corporation made a corresponding journal entry crediting his "Notes Receivable - RE Busch" account with $8,437.50, the amount of the transfer. The corporation deducted the contribution made on its behalf as a profit sharing expense. A statement from Merrill Lynch, Pierce, Fenner & Smith, Inc., confirms that 500 shares of EG & G stock were transferred from Dr. Busch's account to the trust account. Another monthly statement dated July 30, 1976, shows that Dr. Busch previously purchased 500 shares of EG & G stock on July 29, 1976. In his statutory notice of deficiency, the Commissioner disallowed the amount deducted by the corporation as a contribution to the pension trust because "it has not been established that any amount was paid or that if said amount was paid, that said amount was for an ordinary and necessary business expense, or was expended for the purpose designated." The Commissioner correspondingly increased Dr. and Mrs. Busch's taxable income by $8,437.50 for unreported constructive dividends by virtue of the forgiveness of indebtedness resulting from the credit to Dr. Busch's "Notes Receivable" account. OPINION The first issue for decision *698 is whether cash advances to Dr. Busch from his wholly owned corporation were bona fide loans as contended by petitioner or constructive dividends as determined by the Commissioner. Section 61 provides that gross income includes dividends. Section 301 provides that a distribution of property by a corporation to a shareholder with respect to its stock, to the extent of that distribution, is a dividend as defined by section 316 and includable in gross income. A dividend is defined as any distribution of property made by a corporation to a shareholder out of its earnings and profits accumulated after February 28, 1913. Property is defined in section 317 as including money, securities and any other property. Whether the advances to Dr. Busch are loans or dividends is a factual question determined from all the surrounding facts and circumstances. Chism's Estate v. Commissioner,322 F.2d 956 (9th Cir. 1963); Roschuni v. Commissioner,29 T.C. 1193, 1202 (1958), affd. *699 per curiam 271 F.2d 267 (5th Cir. 1959), cert. denied 362 U.S. 988 (1960); Wilson v. Commissioner,10 T.C. 251, 256 (1948), affd. 170 F.2d 423 (9th Cir. 1948). The character of the transaction depends on the intent of the taxpayer when the withdrawals were made. Haber v. Commissioner,52 T.C. 255, 266 (1969), affd. 422 F.2d 198 (5th Cir. 1970); White v. Commissioner,17 T.C. 1562, 1568 (1952).When the withdrawer is in substantial control of the corporation, such control invites a special scrutiny of the transaction. Baird v. Commissioner,25 T.C. 387, 393 (1955).
We reject petitioner's contention that the payments at issue were bona fide loans. The burden of proof is upon petitioner. Welch v. Helvering,290 U.S. 111 (1933). The evidence presented was not persuasive. This is particularly so in light of the "doctoring" of the corporate minutes and the ledger sheets. We are not inclined to give much weight to the corporate ledger as proof that the advances were intended to be bona fide loans. See Doyle v. Mitchell Brothers Co.,247 U.S. 179 (1918). *700 Furthermore, though some of the advances recorded were reduced to promissory notes, many were not. The evidence of repayments to the corporation, likewise, lends little support to petitioner's claim. No repayment schedule was established and the repayments that were made were irregular and did not significantly reduce the outstanding amounts. There was no security or interest arrangements of the type associated with a normal debtor-creditor relationship. Petitioner argues that a majority of the advanced money was used for a valid business purpose. Title to the commercial property, however, was in petitioner's name and he considered the rent from the other tenants to be his personal income. We are not convinced that because the money was used to finance and construct the office building that there was not a significant amount of benefit to petitioner personally. In Kaplan v. Commissioner,43 T.C. 580, 595 (1965), we said that it is well settled that withdrawals made from a corporation by its controlling stockholder, without security, and without interest, for his *701 own personal use and benefit, and without any intention to repay constitute distributions by the corporation with respect to its stock and are, therefore, taxable dividends. The objective factors present in this case as presented by the evidence and the testimony of the witnesses convince us that the amounts advanced to petitioner were not intended to be bona fide loans. We conclude that these amounts constituted constructive dividends to petitioner from his wholly owned corporation. Petitioner has failed to carry his burden of proof. We hold for the respondent on this issue. The second issue is whether a transfer of stock by Dr. Busch to the corporation's profit sharing trust on behalf of the corporation entitled the corporation to a deduction under section 404(a). Contributions to qualified plans are deductible under section 404(a)(1) and 404(a)(3) only in the taxable year "when paid," subject to the section 404(a)(6) grace period. The amount must be "paid" regardless of the employer's method of accounting and it must be in "cash or its equivalent" to get a deduction. Don E. Williams Co. v. Commissioner,429 U.S. 569 (1977). *702 Respondent does not argue that the section 404(a) payment requirement cannot be met by a transfer of property. Instead, he disputes that petitioner has "clearly shown that a transfer of property occurred at all." Petitioner has presented credible evidence in the nature of a third party document clearly showing that the stock was transferred. Petitioner has made a prima facie case. The burden of going forward with rebuttal evidence, therefore, shifts to respondent. Respondent has presented no more than conjecture and innuendo to support his vague claim that even though a transfer occurred, Dr. Busch did not relinguish control of the stock sufficient to effect a meaningful transfer. We hold for petitioner-corporation on the issue of the deduction and, correspondingly, for the petitioner in his individual capacity on the related dividend issue. Decision will be entered for the respondent in docket No. 4498-79.
Decisions will be entered for the petitioners in docket Nos. 12822-80 and 12823-80.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended. ↩
2. Although petitioner did not assign error to this addition to tax in its petition, this is immaterial. In light of our holding for petitioner on the underlying issue, there is no underpayment to which the addition to tax could attach.↩
3. This figure reflects the correction for a $180 cumulative error.↩