*Decision will be entered under Rule 50.*

COUNTESS LAURA SALA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 103863. Promulgated October 8, 1942.

*Richard J. Cronan, Esq.*, and *M. Robert Gallop, Esq.*, for the petitioner.

*Z. N. Diamond, Esq.*, and *Richard C. Flesch, Esq.*, for the respondent.

**OPINION.**

VAN FOSSAN: The issue before us is whether or not the write-down of accounts receivable due from the petitioner to the corporations of which she was the sole stockholder was, in effect, a dividend to her.

There is no controversy between the petitioner and the respondent that under certain circumstances the write-down of an account receivable by a corporation from the stockholder may constitute a dividend. The question here is: Do the facts in the case at bar warrant such a conclusion? We find that they do.

There is one fundamental fact that stands out with startling significance, one which the petitioner relies upon to absolve her from the proposed tax liability but which has precisely the opposite effect. That fact is that she delegated to her uncle, J. S. Bache, the complete and absolute management and control of her financial affairs. She thus conclusively constituted him her agent and representative.

It is well to review the salient events that occurred in the year 1930. The petitioner's husband, Edwin S. Bayer, had died in 1928. He left a will establishing certain legacies but not sufficient estate to pay them. The petitioner's own personal financial situation had become very much involved. She then, in 1930, went to her uncle to seek his advice in solving her fianancial problems. He agreed to help her on the condition, in which she acquiesced, that he be given *carte blanche* to conduct her affairs as he saw fit, with no interference whatever from her. Thereafter he took over her stock in Broadex and Ideal, secured loans for her, and made all arrangements for the future conduct of all of her business matters.

Bache, with the petitioner's complete compliance, delegated to Nathan, his own personal attorney and the attorney of all persons and corporations materially involved in the situation, questions of law and policy thought necessary to the successful consummation of Bache's endeavors. All officers and directors of the corporations, other than Bache and Nathan, were mere figureheads.

During 1930 the petitioner withdrew as loans over $760,000 from both corporations. The record is silent whether she did so on the advice of Nathan, under the direction of Bache, or upon her own initiative. She received $50,000 as the president of Broadex and Ideal, although she denied all knowledge of the operation of the companies and of business affairs in general. She rendered no services whatever to the corporations. She also amassed over $116,000 in stock dividends. The total is over $926,000. She paid no income tax that year. Her return showed an item of over $119,000 as "interest paid" but no explanatory or itemized notation thereon.

The condition of the petitioner's affairs remained practically the same until 1935, with the exception of the withdrawals which had mounted to over $2,000,000. The withdrawals were entered and carried on the books of Broadex and Ideal as accounts receivable. On January 15 and December 24, 1935, by the authority of their boards of directors, Broadex and Ideal "wrote down" the petitioner's accounts receivable by $500,000 and $700,000, respectively. Those amounts were deemed uncollectible. Proper entries were made on the corporate books to evidence such action and the surplus accounts were reduced correspondingly. However, during 1935 and after January 15 of that year Ideal advanced an additional sum of $7,952.40 to the petitioner.

The picture is not complete without reference to the events occur-

ring in 1938. On April 26 of that year, by formal action, the directors of Broadex and Ideal wrote off the entire amounts of their claims against the petitioner "as presently uncollectible" and eliminated those items from their balance sheets. On October 13, 1938, they restored to their books and balance sheets the entire original amounts of their several accounts receivable from the petitioner as they appeared thereon prior to January 15, 1935.

The petitioner submits a many-sided defense the principal points of which are that the write-downs did not constitute a cancellation, forgiveness, or release; that there was no intent to forgive or release any part of the indebtedness; that she had no knowledge of and expressed no acquiescence in or consent to such write-downs; that her financial condition was not improved; that she had no control or voice in the management of Broadex and Ideal; and that the restoration resolutions in 1938 show that the write-downs in 1935 were mere bookkeeping entries.

We are impressed with none of these arguments. They might have some bearing if a different relationship had existed between the petitioner and Bache, Nathan, Broadex, and Ideal. See *Waggaman* v. *Helvering*, 78 Fed. (2d) 721; certiorari denied, 296 U. S. 618; *Jas. J. Gravley*, 44 B. T. A. 722.

The vital element in the situation here is that the petitioner voluntarily and deliberately turned over all of her affairs, including all moneys and transactions which might affect her income tax, to her uncle and Nathan, who thereupon acted in her place and stead. The petitioner now seeks to be exculpated from the normal and logical tax consequences of her act. Having established Bache and Nathan as the managers of her property and income, the responsibility of their maneuvers rests upon her and no disclaimer of hers can be effective.

To allow a taxpayer to avoid or evade the natural and inevitable results of actions taken by his representatives in his behalf, by the simple expedient of turning over his property and its management to them, would afford an invitation to collusion and fraud. We can not countenance such a scheme.

The petitioner's attorneys argue that Bache, Nathan, Broadex, and Ideal were motivated only by their own personal interests and had no thought of the petitioner when the various resolutions were adopted and the concomitant book entries made. We can not ignore the multiple capacities in which both Bache and Nathan acted, nor can we believe that when the actions of record were taken they suddenly forgot the petitioner and proceeded solely in the interests of others. The petitioner is charged with the knowledge which her agents possessed—they were acting in matters of vital importance to her welfare and pecuniary benefit. She can not successfully plead ignorance and innocence.

We must remember also that the petitioner was the sole owner of the stock of Broadex and Ideal. For the sake of convenient handling, the stock of these corporations had been deposited with Bache and he apparently was able to vote it whenever a vote was required. However, she still remained its owner.

We deem it unnecessary to comment at length on the recorded inconsistencies relating to the petitioner's alleged financial difficulties in 1935 or 1938 resulting in the various book entries. We note that potential or actual tax difficulties arose. That fact is no justification for playing fast and loose with corporate books and records.

We observe that following the resolution of January 15, 1935, adopted by the Broadex directors (the majority of whom were also Ideal's directors), Ideal advanced to the petitioner almost $8,000. However, we will take the resolutions of January 15, 1935, at their face value, consider the petitioner's accounts receivable partially uncollectible, and agree that Broadex and Ideal were warranted in writing the uncollectible portions thereof off their books. In these circumstances the principles announced in *Wiese* v. *Commissioner*, 93 Fed. (2d) 921, affirming 35 B. T. A. 701; certiorari denied, 304 U. S. 562; rehearing denied, 304 U. S. 589; *Allen* v. *Commissioner*, 117 Fed. (2d) 364, apply.

In those cases it was held that cash withdrawals of corporate funds made by stockholders and treated as accounts receivable, constitute taxable income to the stockholders in the year in which the charge to the stockholders is canceled on the corporation's books. In the *Wiese* case the court held:

But if the stockholder borrows money from the company, and subsequently the company cancels the debt, income accrues to the stockholder at the time when the character of the withdrawal changes from a loan to a distribution of profits. *Cohen* v. *Commissioner*, 6 Cir., 77 F. 2d 184; cf. *Fitch* v. *Helvering*, 8 Cir., 70 F. 2d 583. Petitioner in his brief attempts to distinguish the Cohen case on the ground that the debt there was charged off by formal resolution of the board of directors, while in the instant case the same thing was accomplished by book entries. The distinction is not important. The result is the same whichever method be applied.

We are of the opinion, and therefore find and hold, that the writedown of the accounts receivable by the two corporations resulted in a cancellation or release of the accounts in the amounts written down. We reach this conclusion with full appreciation of the declarations of the witnesses, consistent with petitioner's theory of the case, that no such result was intended. The explanation of the witness, also urged by counsel, that these "were mere bookkeeping entries" is pregnant with the suggestion of possible fraud. We are impressed more by what was done than by what the witnesses say was intended. We are unable to find any legitimate business reason prompting the 1938

resolutions, by which the corporations first wrote off and then restored the accounts in full.

If it were necessary to consider the petitioner's contentions not heretofore discussed, on the assumption that her status in the factual situation is other than it is, she still can not prevail. Her argument that there was no intention to forgive the indebtedness is answered by the decision in *Hudson* v. *Commissioner*, 99 Fed. (2d) 630; certiorari denied, 304 U. S. 644, under facts very similar to those in the case at bar. There, as here, the book entries confirmed and clarified the resolution to write off a portion of the petitioner's obligation as uncollectible and thus they effectively overcome petitioner's theory that no cancellation thereof was made or intended.

The petitioner's argument that her financial condition was not improved by the cancelations is valueless because of her own failure to establish that condition. The record shows that she possessed property in 1935, but its extent, character, and value are not shown. The mere opinion of her uncle, or of any other person, unsupported by other proper evidence, is not a sufficient basis for the conclusion that she was insolvent or that her financial condition was not improved by the partial write-downs.

Counsel for petitioner boldly pleads the equities of his case. No purpose is served by discussing this phase. But even a casual reading of the facts leads one to conclude that the equities are all with the Government.

The petitioner has not shown that the respondent erred in his allocation of the amounts of the write-downs to earnings available for dividends and the return of capital. Therefore, the determinations of the respondent as they appear in his notice of deficiency are approved.

*Decision will be entered for the respondent.*