**SPARTAN PETROLEUM COMPANY,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

Civ. A. No. 76–1576.

United States District Court,
D. South Carolina,
Spartanburg Division.

Sept. 30, 1977.

Bernelle Demo, Spartanburg, S. C., for plaintiff.

James D. McCoy, III, Asst. U. S. Atty., Thomas P. Simpson, U. S. Atty., Greenville,

**734**

S. C., John A. Townsend, Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

HEMPHILL, District Judge.

This is a federal income tax refund suit instituted by the plaintiff to recover $82,-825.62 in federal income tax and interest for the tax year 1972, plus interest as provided by law. In that year, the plaintiff exchanged its rights under certain gasoline distributor agreements for a total consideration of $1,649,000 consisting of cash of $1,415,825.27 and cancellation of indebtedness of $233,174.73. The plaintiff's reported basis in the agreements transferred was $128,368.37, thus giving plaintiff a total gain of $1,520,631.33. The plaintiff seeks to exclude from its taxable gain the amount of the indebtedness cancelled. Section 108 of the Internal Revenue Code of 1954 permits a taxpayer to exclude from income amounts which are "income by reason of the discharge . . . of any indebtedness."[1]

The plaintiff is in the business of distributing oil and gas products. Prior to 1971, the plaintiff was an authorized distributor of products produced by the Atlantic Richfield Company (hereinafter ARCO). Prior to May, 1971, the plaintiff had incurred certain indebtedness owing to ARCO. This indebtedness arose from both direct borrowings by the plaintiff from ARCO and from obligations from a third party to ARCO which obligations the plaintiff assumed in acquiring the assets of that third party.

On May 21, 1971, ARCO orally advised the plaintiff of its intent to cancel the distributorship agreements. The parties then entered an extended period of negotiations as to the appropriate terms of the cancellation, including the amount of damages ARCO would pay the plaintiff. Basically the negotiations in respect to the amount of damages and how it would be paid may be summarized as follows: ARCO agreed initially to pay the plaintiff a total lump sum of $1,649,000 as damages arising from ARCO's cancellation of the distributor agreements. Although ARCO preferred to pay the plaintiff that amount by check, and then have the plaintiff pay its outstanding indebtedness to ARCO by return check, the plaintiff negotiated a term that the amount of the outstanding indebtedness would merely reduce the net amount that ARCO would pay the plaintiff.

Thereafter, all of the terms of the cancellation contract were finalized and a contract was executed on September 1, 1972. The contract provided, in pertinent part, that, as consideration for the cancellation, ARCO agreed to discharge the plaintiff's indebtedness to ARCO in the total amount of $233,174.73 and to pay cash to plaintiff of $1,415,825.27. The total consideration thus paid was $1,649,000 as had been earlier agreed in the negotiations.

In reporting its tax liability for 1972 on Form 1120 (U.S. Corporate Income Tax Return), the plaintiff reported the receipt of consideration under the cancellation agreement as follows: (1) the cash was reported as an amount received upon the sale or exchange of a capital asset in Schedule D and was reduced by the plaintiff's basis of $128,368.67, to provide a reported taxable gain of $1,287,456.60; and (2) the cancellation of the indebtedness of $233,174.73 was not reported as taxable gain, the plaintiff instead filing a Form 982 (Consent to Adjustment of Basis of Property Under Sec-

---

1. SEC. 108. INCOME FROM DISCHARGE OF INDEBTEDNESS.

(a) *Special Rule of Exclusion.*—No amount shall be included in gross income by reason of the discharge, in whole or in part, within the taxable year, of any indebtedness for which the taxpayer is liable, or subject to which the taxpayer holds property, if—

(1) the indebtedness was incurred or assumed—

(A) by a corporation, or

(B) by an individual in connection with property used in his trade or business, and

(2) such taxpayer makes and files a consent to the regulations prescribed under section 1017 (relating to adjustment of basis) then in effect at such time and in such manner as the Secretary or his delegate by regulations prescribes. . . .

tion 1017 of the Internal Revenue Code), whereby the plaintiff adjusted its basis in business property in the amount of $231,-292.34.[2] The plaintiff's explanation of the transaction on Form 982 was as follows:

> Mortgagee agreed to cancel notes on above properties owned by taxpayer because of decision by mortgagee to cease operations in southeast area of the U.S.—said property being used by mortgagor to distribute mortgagee's productions.

Upon audit of the plaintiff's 1972 return, the Commissioner of Internal Revenue (through his duly authorized delegate) determined that the plaintiff could not exclude from income the amount of the cancelled indebtedness. This determination required that the entire $1,649,000 be treated as an amount realized on the exchange of the plaintiff's rights under the distributor agreements. Based upon this determination, the Commissioner assessed an additional tax liability of $69,387.70, and interest thereon of $13,437.92.

The plaintiff paid the additional assessments, filed a claim for refund, and, upon its denial, instituted the present suit for refund. Both parties have now filed motions for summary judgment pursuant to Rule 56 in that there are no genuine issues of material fact and judgment can be properly rendered as a matter of fact. The record for this motion consists of undisputed facts contained in the pleadings, interrogatories, and affidavits properly filed with the court.

The question presented in these motions for summary judgment is whether a taxpayer satisfying an indebtedness in full by the transfer of property in the value of the face amount of the indebtedness has generated "income by reason of the discharge . . . of . . . indebtedness" within in the meaning of that term in Section 108.

The plaintiff exchanged its rights under its distributor agreements for consideration from ARCO having a total value of $1,649,-000, consisting of cash of $1,415,825.27 and cancellation of its indebtedness of $233,-174.73. There is no question in this case that, had ARCO paid the plaintiff the total consideration in cash and required the plaintiff to pay off the indebtedness (either before or after ARCO's cash payment), the plaintiff would have had to treat the entire $1,649,000 as an amount realized on the exchange and pay the resulting capital gains tax. The question presented here is whether the plaintiff can avoid that result simply by arranging to have ARCO cancel the debt as partial consideration for the exchange. In order to understand why the question must be answered in the negative, certain basic concepts of the federal income tax law must be clearly understood.

Section 61(a)[3] of the Internal Revenue Code of 1954, the starting point for analysis of the income tax laws, provides in sweeping terms that "all income from whatever source derived" is gross income unless otherwise specifically excluded by statute. This provision was designed to exert the full measure of Congress' taxing power. *Commissioner of Internal Revenue v. Glenshaw Glass Co.,* 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955). Since true economic gain is the *sine qua non* to income under the Code and the Sixteenth Amendment, the courts have long recognized that cancellation of indebtedness may play a role in the conferral of taxable economic benefit under the Code. There are two critical circumstances relevant here in which cancellation of indebtedness plays such a role.

---

**2.** The discrepancy between the actual amount of the indebtedness ($233,174.73) and the amount by which basis was reduced ($231,-292.34) is not explained in the record, but is not here pertinent.

**3.** SEC. 61. GROSS INCOME DEFINED.

(a) *General Definition.*—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

    (1) Compensation for services, including fees, commissions, and similar items;

    (2) Gross income derived from business;

    (3) Gains derived from dealings in property . . .

    (12) Income from discharge of indebtedness . . . . .

First, cancellation of indebtedness can be the *direct source* of taxable income. The income thus generated is commonly referred to as "cancellation of indebtedness income," although Section 61(a)(12), refers to it as "Income from discharge of indebtedness." While the ramifications of such income can be complex, the basic concept of cancellation of indebtedness income is easily comprehended. Suppose a taxpayer having an asset of $100 and no liabilities borrows $100 cash. He then has assets of $200 and $100 in liabilities; his net worth being unchanged, there is no taxable economic gain; and he has no "gross income" for tax purposes. If the creditor then accepts $50 from the taxpayer in full satisfaction of the $100 indebtedness, at that point the taxpayer does have an economic gain (his net worth having increased by $50) and that economic gain is "gross income" subject to federal income tax. See *United States v. Kirby Lumber Co.,* 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 13 (1931); and *Commissioner of Internal Revenue v. Jacobson,* 336 U.S. 28, 69 S.Ct. 358, 93 L.Ed. 477 (1949). This type of income thus arises through the discharge of indebtedness by the transfer from the debtor to the creditor of cash or property having a value of less than the face amount of the debt.

Second, cancellation of indebtedness can be simply the *medium* through which other types of income arise. For example, if an employee owes his employer $100 and renders $100 worth of services for the employer in return for the employer's cancellation of the indebtedness, the employee has received personal service income of $100. Sec. 61(a)(1). That income is not cancellation of indebtedness income because the cancellation is merely the medium for payment of other income, and is not the source of the income itself. The same is true in a myriad of other contexts. For example, a corporation by cancelling a shareholder's indebtedness to it can confer a taxable economic benefit in the form of a dividend. E. g., *Hash v. Commissioner of Internal Revenue,* 273 F.2d 248, 250 (4th Cir. 1959).

Cancellation of indebtedness as the medium for a payment resulting in another type of income is equally applicable to dealings in property. Sec. 61(a)(3). Taxable gain from dealings in property is the excess of the "amount realized" upon sale or exchange—essentially the amount the seller receives—over the seller's basis in the property sold—his investment. Sec. 1001.[4] If a taxpayer buys property for $50 and sells it for $100, he has $50 gain which is "gross income" under Section 61. The result is the same if the taxpayer receives property worth $100 in exchange rather than cash. And the result is the same if, instead of receiving cash or property, the seller arranges to have the purchaser cancel indebtedness in the value of the property he transfers to the purchaser. See *Rogers v. Commissioner of Internal Revenue,* 103 F.2d 790 (9th Cir. 1939), *cert. denied* 308 U.S. 580, 60 S.Ct. 98, 84 L.Ed. 486 (1939), *rehearing denied* 308 U.S. 635, 60 S.Ct. 135, 84 L.Ed. 528 (1939); see also *Kenan v. Commissioner of Internal Revenue,* 114 F.2d 217 (2nd Cir. 1940).

Armed with these two basic, and mutually inconsistent concepts, it is apparent that the cancellation here is of the type giving rise to gains from dealings in property rather than the type giving rise to cancellation of indebtedness income. The plaintiff exchanged its property (the distribution agreements) in an arm's-length transaction for a total consideration having an economic value of $1,649,000. Since it is axiomatic that properties exchanged in such an arm's-length dealing are of presumptively equal value (*United States v. Davis,* 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962)), it follows that the plaintiff did not discharge its indebtedness for less than its

---

4. SEC. 1001. DETERMINATION OF AMOUNT OF AND RECOGNITION OF GAIN OR LOSS.

(a) *Computation of Gain or Loss.*—The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 1011 for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized.

face value; rather it paid ARCO full value through the transfer of property.

The plaintiff exchanged its property (the distributor agreements) for a total consideration (or "amount realized" in terms of Section 1001) of $1,649,000 and logically must compute its gain by reference to that amount. Nevertheless, the plaintiff urges that it qualifies for relief under Section 108. That section provides that "No amount shall be included in gross income by reason of the discharge * * * of any indebtedness for which the taxpayer is liable" if certain conditions are present and the taxpayer consents to basis adjustments under the Regulations prescribed under Section 1017. As noted above, the taxpayer here simply has no "income by reason of the discharge * * * of any indebtedness"; it has income by reason of dealings in property.

An examination of the substance of this transaction, rather than the form, quickly reveals that the purported "cancellation of indebtedness" was nothing of the sort. Plaintiff paid full value for the cancellation of said notes and received no income from their cancellation. On the other hand, plaintiff received, as capital gain income, the entire amount of the negotiated purchase price of the terminated franchise agreement (less basis). The fact that the transactions were conducted simultaneously in an apparent effort to take advantage of Section 108 does not alter the tax consequences because there simply was no "discharge of indebtedness" within the meaning of that section.

Therefore, for the foregoing reasons, plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted.

AND IT IS SO ORDERED.