Louis DeNIRO, Frank DeNiro and Michael DeNiro, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 76–1403.

United States Court of Appeals, Sixth Circuit.

Argued June 8, 1977.

Decided Aug. 30, 1977.

Rehearing Denied Oct. 28, 1977.

Frederick M. Coleman, U. S. Atty., Cleveland, Ohio, David J. Curtin, Scott P. Crampton, Gilbert Andrews, Gary R. Allen, Arthur L. Bailey, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellant.

James C. Herndon, William T. Walker, Buckingham, Doolittle & Burroughs, Akron, Ohio, for plaintiffs-appellees.

Before WEICK and LIVELY, Circuit Judges, and ZIRPOLI,* District Judge.

LIVELY, Circuit Judge.

The government appeals from a judgment for the plaintiffs in an action for refund of estate taxes. The jury found the value of the decedent's estate to be less than the government claimed and the tax paid to be in excess of the amount due. Jurisdiction was based on 28 U.S.C. § 1346(a)(1).[1] The issues on appeal as set forth in the government's brief relate to the standing of the plaintiffs to maintain the action, the sufficiency of the evidence upon which the jury determined the amount of the taxable estate and the allowance by the district court, after verdict, of litigation expenses as a further reduction of the taxable estate.

Vincent DeNiro (Vincent) died intestate, a resident of Ohio, on July 17, 1961. There were no probate proceedings and no personal representative was appointed. No federal estate tax return or Ohio inheritance tax return was filed. Vincent was divorced and his heirs at law were two daughters who were minors at the time of his death. He was also survived by three brothers, the appellees. On August 23, 1965 the appellees were convicted in the United States District Court for the Northern District of Ohio of willfully attempting to evade and defeat the federal estate tax owed by the estate of Vincent. Their conviction was affirmed by this court. *United States v. DeNiro*, 392 F.2d 753 (6th Cir.), *cert. denied*, 393 U.S. 826, 89 S.Ct. 89, 21 L.Ed.2d 97 (1968). The criminal case was tried without a jury and the District Judge made findings of fact which were filed in the record of the present case.

On April 4, 1969 the Internal Revenue Service (IRS) filed jeopardy assessments against the three DeNiro brothers as "nominees or transferees" of the estate of Vincent. Liens were recorded by the IRS against all the assets of two corporations which were controlled by Vincent, National Cigarette Service of Youngstown, Inc. (National Cigarette) and Valley Land Company (Valley Land). No assessment was made against either corporation. There was a partial abatement of the assessments and the amount remaining after abatement was paid by the two corporations in August and September, 1969. After claims for refund were denied the present action was filed with the two corporations and the three DeNiro brothers as plaintiffs. The government's motion to dismiss was granted as to the two corporations, but denied as to the three individual plaintiffs. The district court found that it had no jurisdiction over a claim by the corporations, even though they actually paid the taxes assessed against Vincent's estate, because they were not "taxpayers" within the meaning of the statute which permits claims for refund. The court defined "taxpayer" as the person actually owing the tax and rejected a con-

---

* The Honorable Alfonso J. Zirpoli, Senior Judge, United States District Court for the Northern District of California, sitting by designation.

1. **§ 1346. United States as defendant**

    (a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

    (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws;

**656**

struction of 26 U.S.C. § 6402(a)[2] which would permit a refund only to the person actually making the overpayment. Construing the complaint most favorably to the plaintiffs on the motion to dismiss, the district court found that it alleged that the corporations made the payments voluntarily to protect their major shareholders rather than involuntarily to protect their own assets. The court reasoned that the persons on whose behalf the payments were made were "taxpayers" who were entitled to sue for refund.

At this point in the proceedings the district court assumed that the three individual plaintiffs were the controlling shareholders of the two corporations. In fact, none of them ever owned stock in the two corporations. Vincent had caused stock to be issued to them as nominees, and the certificates had been endorsed by the brothers and returned to Vincent. In the prosecution of the appellees for attempting to avoid payment of the estate tax due on Vincent's estate the district court made a finding of fact that on the date of Vincent's death, after conferring with an associate of Vincent, "[t]hen and there they [the three appellees] agreed to gather together and secure permanent possession of these and all other properties which had belonged to their deceased brother to the exclusion of his rightful heirs." The district court in the criminal case further found that "Frank, Louis and Michael DeNiro thus marshalled all the assets of Vince DeNiro's estate and agreed to do anything that was necessary to maintain permanent possession of them," and that the three appellees owned no interest in either National Cigarette or Valley Land. The evidence in the present case is consistent with these findings. It was stipulated in the present case that at the time of his death Vincent owned 100% of Valley Land and at least 65% of National Cigarette. Frank DeNiro, who was president of both corporations, testified that ownership

of the two corporations never changed after Vincent's death. If the corporations paid the tax deficiencies "to protect their major shareholders," as found by the district court, the payments were made on behalf of the estate of Vincent DeNiro, not of the three appellees personally.

■ We believe the district court erred in dismissing the corporations as plaintiffs. Liens had been filed against both corporations as nominees of the estate of Vincent DeNiro. Louis DeNiro testified without contradiction that he was told by an IRS representative that National Cigarette would be padlocked and Valley Land would be taken over if he and his brothers refused to sign Form 890, by which they accepted a proposed tax deficiency of $81,000 against the estate. He said the taxes were paid by the two corporations in order to continue in business. Frank DeNiro testified that as president of the two corporations he caused the deficiency assessment to be paid after the tax liens were placed against the corporations' property.

■ Section 7701(a)(14) of the Internal Revenue Code of 1954, 26 U.S.C. § 7701(a)(14), provides:

The term "taxpayer" means any person subject to any internal revenue tax.

When a corporation which has been subjected to a lien on all its assets for unpaid taxes allegedly due from the estate of the deceased owner of all or a majority of its stock pays the assessment, it is not acting as a volunteer. On the contrary, by its actions the IRS has treated it as a "taxpayer," i. e., one subject to a tax, and if the requirements for claiming a refund have been met[3] it has standing to sue for a refund. See 26 U.S.C. § 7422(a); *Stahmann v. Vidal*, 305 U.S. 61, 66, 59 S.Ct. 41, 83 L.Ed. 41 (1938); *White v. Hopkins*, 51 F.2d 159, 163 (5th Cir. 1931); *Smart v. United States*, 21 F.2d 188, 190 (W.D.Mo.1927); cf.

2. **§ 6402. Authority to make credits or refunds**

(a) **General rule.**—In the case of any overpayment, the Secretary or his delegate, within the applicable period of limitations, may credit the amount of such overpayment, including any

interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall refund any balance to such person.

3. *See* 26 U.S.C. § 6511(a).

*Morse v. United States*, 494 F.2d 876, 880 (9th Cir. 1974). We do not believe that *Keith v. Woodworth*, 115 F.2d 897 (6th Cir. 1940), and *Ohio Locomotive Crane Co. v. Denman*, 73 F.2d 408 (6th Cir.), *cert. denied*, 294 U.S. 712, 55 S.Ct. 508, 79 L.Ed. 1246 (1934), require a contrary conclusion. In both of those cases the corporations which paid the tax did so as volunteers. There had been no liens filed against either paying corporation. *Ohio Locomotive, supra*, holds that one who pays the tax of another willingly and without duress, with full knowledge of what he is doing cannot recover in a refund action. National Cigarette and Valley Land paid under completely different circumstances.

■ Neither corporation appealed from the order of dismissal, and the only "standing" question before this court relates to the three individual plaintiffs-appellees. Since payment was not made by the individual plaintiffs or on their behalf they have no standing to sue for a refund individually. However, the question remains whether they have standing to act in any capacity. The appellees were not transferees under the stipulated facts and the evidence. If they remained nominees after Vincent's death, his estate was their principal.

■ The government argues that to be a proper party in a refund suit the person seeking a refund must show that the United States has assessed *and* collected the taxes from him; *i. e.*, that only the person who makes the actual payment has standing to bring the refund suit. This would mean that no one could recover in the present action, since the corporations which paid the assessment failed to appeal their dismissal. Though dicta in some opinions has indicated such a requirement, *e. g.*, *Lewis v. Reynolds*, 284 U.S. 281, 283, 52 S.Ct. 145, 76 L.Ed. 293 (1932), courts which have dealt directly with the question have not so held. *Morse v. United States, supra; First National Bank v. United States*, 265 F.2d 297, 299–300 (3d Cir. 1959). We conclude that one other than the actual payer of a tax may have standing to sue for a refund.

■ Referring to the estate tax, 26 U.S.C. § 2002 provides "[t]he tax imposed by this chapter shall be paid by the executor," while Section 2203 defines executor as follows:

### § 2203. Definition of executor

The term "executor" wherever it is used in this title in connection with the estate tax imposed by this chapter means the executor or administrator of the decedent, or, if there is no executor or administrator appointed, qualified, and acting within the United States, then any person in actual or constructive possession of any property of the decedent.

Since the three DeNiro brothers took actual possession of Vincent's property after his death and no executor or administrator was appointed, they became "executors" for purposes of the estate tax requirements and were liable for payment of that tax.

■ In its brief the government stated:

We do not dispute that where a corporation pays the tax liability of its controlling shareholder, the transaction might, in appropriate circumstances, be treated as the distribution of a constructive dividend, and that such shareholder might then be entitled to maintain a refund suit on his own behalf, since any overpayment would then belong to him rather than the corporation.

Under our analysis of the facts that is exactly the case before us. Since the estate of Vincent DeNiro was the controlling shareholder in both corporations, payment of its tax liability by the corporations gave the estate the right to sue for a refund. Since no personal representative had been appointed, the appellees, as "executors" under § 2203, should be permitted to seek the refund on behalf of the estate.

The only issues submitted to the jury related to the value of Vincent's estate. There was no general verdict. The jury answered interrogatories on the contested value questions and judgment was entered on the basis of these answers. Following its erroneous conclusion that the two corporations paid the deficiency assessment to

protect the appellees as their major shareholders, the district court entered judgment in favor of the appellees in their individual capacities, rather than as executors of the estate of Vincent DeNiro. This error will be corrected on remand.

■ We have examined the transcript and conclude that there is evidence to support the verdict of the jury on the issues related to estate values. There was a clear conflict in the evidence on the question of whether Vincent was personally liable for payment of $77,000 in loans from Andrew Marino. The jury was instructed that Vincent could not be liable under Ohio law on two notes which National Cigarette gave to Marino since he did not sign them but that he could be liable on an underlying agreement related to the transaction evidenced by the notes. The jury apparently believed the testimony that he was personally obligated to Marino. It is also contended by the government that the plaintiffs did not establish that the value of National Cigarette was less than the value assigned to it by an agent of the IRS. This argument is basically that the witnesses for the plaintiffs dealt only with book value rather than fair market value and that the books of the corporation were inaccurate. Though the testimony of the witness Rogan related primarily to book value, there was evidence of the fair market value of the decedent's interest in the corporations and the jury was instructed that this was the value the plaintiffs were required to prove by a preponderance of the evidence. The district court did not err in denying the government's motions for directed verdict and for judgment notwithstanding the verdict on the valuation issues.

■ The third claim of error relates to the allowance as administration expenses of an estate tax deduction equal to the amount of the attorney fees incurred in this refund suit. The government would clearly be correct in asserting that such expenses are not deductible if the recovery in this case were for the benefit of the appellees personally. However, we have held that the tax payments were made for the benefit of the estate of Vincent DeNiro and we are directing that judgment be entered in favor of appellees only as fiduciaries for the estate. Though it seems anomalous to allow a deduction for administration expenses of an estate which has not been administered, compare *Pitner v. United States*, 388 F.2d 651 (5th Cir. 1967), there has now been at least "tax administration" of Vincent's estate and the present litigation has resulted in a reduction of the deficiency assessment. Under these circumstances the allowance of the attorney fees in the present action as administration expenses is warranted. 26 U.S.C. § 2053(a)(2).

The attorneys for appellees agreed at oral argument that payment of the judgment should be made to the estate of Vincent DeNiro, since they had contended, *inter alia*, that the appellees sued as executors and they obtained a deduction for administration expenses on the theory that this litigation benefited the estate. Accordingly, the judgment of the district court is vacated and the cause remanded for entry of judgment on the verdict in favor of the estate of Vincent DeNiro with such provisions relating to payment as the district court determines to be necessary for protection of the heirs at law of Vincent DeNiro.