ESTATE OF VINCENT DeNIRO, DECEASED, HELEN M. PAPALIA AND JOANNE F. DeNICHOLAS, ADMINISTRATRICES, LOUIS R. DeNIRO, TRANSFEREE, FRANK DeNIRO, TRANSFEREE, AND MICHAEL DeNIRO, TRANSFEREE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of De Niro v. Commissioner
Docket No. 9178-76.
United States Tax Court
T.C. Memo 1982-497; 1982 Tax Ct. Memo LEXIS 249; 44 T.C.M. (CCH) 981; T.C.M. (RIA) 82497; August 30, 1982. James C. Herndon,William T. Walker, and Robert W. Malone, for the petitioners. Richard S. Bloom and Buckley D. Sowards, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency of $46,268.20 in the 1969 Federal income tax of the Estate of Vincent DeNiro and imposed an addition to tax pursuant to section 6651(a)(1)[1] of $11,567.05. [2] The issues for decision are: 1. Whether the payments made by two corporations to satisfy the estate tax liability assessed by respondent against the Estate of Vincent DeNiro were includable in the estate's taxable income *253 for 1969. 2. Whether the Estate of Vincent DeNiro is liable for the addition to tax under section 6651(a)(1) for failure to file an income tax return for 1969. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The decedent, Vincent DeNiro, died intestate on July 17, 1961, in Youngstown, Ohio. We was survived by two daughters, Joanne F. DeNicholas and Helen M. Papalia; three brothers, Louis R. DeNiro, Frank DeNiro, Jr., and Michael DeNiro (hereinafter sometimes referred to as "the DeNiro brothers"), and his mother. On the date of his death, the decedent owned the following property: 100 percent of the common stock of Cicero's, Inc.; 100 percent of the common stock of Valley Land Company (hereinafter VLC); 65 percent of the common stock of National Cigarette Service of Youngstown, Inc. (hereinafter NCS); cash in the amount of $50,000; and life insurance policies with a cash value of $15,646. The Estate of Vincent DeNiro (hereinafter sometimes referred to as "petitioner") never filed a Federal estate tax return or a 1969 Federal income tax return. On August 23, 1965, the DeNiro brothers were convicted in the United States District Court *254 for the Northern District of Ohio of willfully attempting to evade and defeat the Federal estate tax owed by the decedent's estate. United States v. Frank DeNiro, Jr., Michael DeNiro, and Louis DeNiro, an unreported case (N.D. Ohio, August 23, 1965). Their conviction was subsequently affirmed by the United States Court of Appeals for the Sixth Circuit. United States v. DeNiro,392 F. 2d 753 (1968), cert. denied 393 U.S. 826 (1968). The District Court found that (1) on the date of the decedent's death his brothers agreed to secure permanent possession of all the properties which had belonged to their deceased brother to the exclusion of his rightful heirs (the decedent's daughters); and (2) that by August 22, 1962, the decedent's assets "were jointly gathered together by Louis, Frank, and Michael DeNiro, each sharing equally in the actual ownership * * *." During 1969, petitioner owned 65 percent of the stock of NCS and 100 percent of the stock of VLC. At all times relevant hereto, however, the DeNiro brothers controlled the operations of both NCS and VLC (hereinafter sometimes referred to as "the corporations"). Frank deNiro, Jr., was the *255 president of both NCS and VLC, and Louis DeNiro was secretary-treasurer of NCS. NCS was in the business of operating vending machines, and VLC was in the business of owning and operating rental apartments. On or about April 9, 1969, respondent made jeopardy assessments for estate tax, addition to tax, and interest of $1,188,000 against petitioner and the DeNiro brothers, as transferees of the estate. Respondent also filed and recorded Federal tax lines against petitioner, the DeNiro brothers, as transferees of the estate, and Cicero's, Inc., NCS, and VLC, as nominees of the estate. No assessments were made against the corporations. On or about May 9, 1969, Frank DeNiro, Jr., Louis DeNiro, Michael DeNiro, Samuel Karam, their attorney, Jack Marmagin, the accountant for NCS, and Anthony Davanzo, the accountant for VLC, attended a meeting with two Internal Revenue Service attorneys, Bernard Friedlander (now deceased) and Michael Ruggieri. At this meeting, the DeNiro brothers signed a Form 890 (Estate Tax Waiver of Restriction on Assessment and Collection of Deficiency and Acceptance of Overassessment) consenting to the assessment and collection of an estate tax deficiency of *256 $81,000, plus interest thereon. Subsequently, respondent made a partial abatement of the original jeopardy assessments and the amount of the assessment remaining after abatement, $104,577.04, was paid by NCS and VLC in 1969. NCS and VLC paid $89,257.04 and $15,320, respectively, of the assessment. The payment made by VLC represented proceeds of an insurance claim filed by VLC with respect to fire damage to one of its apartment units, while NCS borrowed $69,757.04 of the amount it paid. After NCS and VLC paid the assessment, respondent released the Federal tax liens he had filed against petitioner, the DeNiro brothers, Cicero's, Inc., NCS, and VLC. On or about June 15, 1970, NCS filed its corporate income tax return for the 1969 calendar year. On September 14, 1971, NCS filed a Form 1120X (Amended U.S. Corporate Income Tax Return) for 1969, claiming a deduction of $89,257.04 for the payment it had made with respect to the estate tax assessment. On January 31, 1972, the refund claimed on the amended return was allowed. On January 31, 1977, however, the United States filed a complaint in the United States District Court for the Northern District of Ohio, alleging that NCS *257 was not entitled to deduct the $89,257.04 payment and that the refund was erroneous. This suit was settled by the parties and was dismissed by the District Court pursuant to stipulation on March 21, 1979. On or about January 15, 1971, VLC filed its corporate income tax return for the taxable year ended July 31, 1970. Sometime in September 1971, VLC filed a Form 1120X (Amended U.S. Corporate Income Tax Return) for the taxable year ended July 31, 1970, claiming a deduction of $15,320 for the payment it had made with respect to the estate tax assessment. Its refund claim was disallowed. In October 1974, the DeNiro brothers, NCS, and VLC, commenced a refund action in the United States District Court for the Northern District of Ohio, asserting that the $104,577.04 paid by the two corporations constituted an overpayment of petitioner's estate tax. The District Court dismissed the corporations as plaintiffs in the suit after determining that it did not have jurisdiction over their claim. On July 21, 1975, the jury found the value of the estate was less than the government claimed and entered a judgment for a refund of $51,155.73 for the DeNiro brothers. DeNiro, et al. v. United *258 States, an unreported case ( N.D. Ohio, 1975, 36 AFTR 2d 75-6517). This judgment was later amended to provide for a refund of $61,613 in order to allow the estate an $18,000 deduction for attorney fees incurred in securing the refund. The United States appealed the amended judgment to the United States Circuit Court of Appeals for the Sixth Circuit. The issues on appeal related to the standing of the DeNiro borthers to maintain the refund action, the sufficiency of the evidence upon which the jury determined the amount of the taxable estate, and the allowance by the District Court of the deduction for attorney fees. The Sixth Circuit affirmed the District Court. DeNiro v. United States,561 F. 2d 653 (6th Cir. 1977). Although the Court of Appeals determined the DeNiro brothers did not have standing to sue for a refund individually, the court decided that the brothers had standing to seek a refund on behalf of petitioner, as executors. The Court of Appeals decided that the DeNiro brothers had standing to sue in that capacity because they became "executors" of the estate for purposes of the estate tax requirements [3] and were liable for the payment *259 of the tax when they took actual possession of the decedent's property after his death and no executor or administrator was appointed. In concluding its opinion, which was filed August 30, 1977, the Court of Appeals remanded the case "for entry of judgment on the verdict in favor of the estate of Vincent DeNiro with such provisions relating to payment as the district court determines to be necessary for protection of the heirs at law of Vincent DeNiro." DeNiro v. United States,561 F. 2d at 658. On September 12, 1977, Joanne F. DeNicholas and Helen M. Papalia, the decedent's daughters, were appointed co-administratrices of the decedent's estate by the Probate Court of Mahoning County, Ohio. In March 1978, NCS and VLC petitioned the Probate Court of Mahoning County, Ohio, for authority to present claims to petitioner for the amounts they had paid to respondent with respect to petitioner's estate tax assessment. On May 15, 1978, pursuant to the remand by the Sixth Circuit, the District Court for the Northern District of Ohio entered a second amended judgment for a refund of $67,741.33, plus interest, for petitioner in order to allow an additional *260 deduction for the attorney fees incurred in resisting the government's appeal, and ordered that the refund be paid to "Helen M. Papalia and Joanne F. DeNicholas as fiduciaries of the estate of Vincent DeNiro." On May 31, 1978, an agreement (hereinafter sometimes referred to as "the estate settlement agreement") settling their claims to the decedent's estate was entered into by NCS, VLC, Frank, Louis, and Michael DeNiro, and Helen M. Papalia and Joanne F. DeNicholas, individually and as co-administratrices of the decedent's estate. On June 27, 1978, the Probate Court of Mahoning County approved the agreement. Pursuant to the agreement, the DeNiro brothers agreed to pay the sum of $30,000 to the decedent's daughters, Helen M. Papalia and Joanne F. DeNicholas, and released them from any claims that they might have against them. The DeNiro brothers, NCS, and VLC also agreed to assume all responsibility for the "prosecution or defense" of the instant litigation before the United States Tax Court. In addition, NCS and VLC agreed to reduce their aggregate claims against the decedent's estate to a sum equal to the total final judgment in the estate tax refund litigation less all claims *261 for attorney fees with respect thereto. Upon the payment of their claims, the corporations promised to execute a general release in favor of the decedent's daughters, both individually and as co-administratrices of the estate. As their part of the bargain, the decedent's daughters agreed, both individually and in their capacity as co-administratrices of the estate, to disclaim any interest in the stock of the corporations and to release the DeNiro brothers and the corporations from any or all claims that they might have against them. In addition, the decedent's daughters promised to assign to the corporations any payments received in satisfaction of the final judgment in the estate tax refund litigation. On March 6, 1979, respondent served upon petitioner (1) a "Notice of Jeopardy Assessment and Right of Appeal" assessing income tax, addition to tax, and interest of $84,244.57 for 1969 pursuant to section 6861 and (2) a "Notice of Termination Assessment of Income Tax" assessing income tax of $10,265.21 for 1979 pursuant to section 6851. Respondent set off the estate tax refund judgment, plus interest, against the above assessed taxes and remitted the remaining balance of the *262 refund judgment to the co-administratrices of the estate. On April 3, 1979, petitioner filed a protest against the jeopardy and termination assessments made by respondent. Respondent sustained the assessments, and petitioner filed suit pursuant to section 7429(b) in the United States District Court for the Northern District of Ohio challenging and validity of the assessments. On July 10, 1979, the District Court issued a memorandum opinion and order sustaining the jeopardy and termination assessments. In the notice of deficiency, respondent determined that petitioner realized income of $104,577.04 in 1969 attributable to the payment of its estate tax by NCS and VLC. Respondent also determined that petitioner was liable for the addition to tax for failure to file an income tax return for 1969. OPINION We must first decide whether petitioner realized taxable income upon the payment of its estate tax by NCS and VLC. Respondent maintains that the corporations' payment of the estate tax assessment constitutes ordinary income to petitioner under sections 61 and 641. Petitioner, on the other hand, argues that the corporations paid the estate tax assessment to further their *263 own interests and not to benefit the estate. Consequently, petitioner contends that the payments constituted ordinary and necessary business expenses of the corporations that are not includable in its income. For the reasons set forth below, we hold for respondent. Section 61(a)(7) provides that gross income includes the receipt of a dividend, and section 316(a) defines a divided as "any distribution of property made by a corporation to its shareholders * * *." See also sec. 301. It is well settled that when a corporation pays an obligation of its shareholder or makes a payment for his benefit, such payment may constitute a constructive dividend to that shareholder to the extent of the available earnings and profits. Wall v. United States,164 F. 2d 462 (4th Cir. 1947); Silverstein v. Commissioner,36 T.C. 438 (1961); Sachs v. Commissioner,32 T.C. 815 (1959), affd. 277 F. 2d 879 (8th Cir. 1960), cert. denied 364 U.S. 833 (1960). See also Old Colony Trust Co. v. Commissioner,279 U.S. 716 (1929). *264 To constitute a constructive dividend, the corporation must have conferred an economic benefit on the shareholder without expectation of repayment and such benefit must primarily advance the shareholder's personal interest as opposed to the business interests of the corporation. Loftin and Woodward, Inc. v. United States,577 F. 2d 1206 (5th Cir. 1978). The fact that the formalities of a dividend are lacking, that the dividend is not recorded on the corporate books as such, that it is not pro rata, or that some of the shareholders do not participate in its benefit is of no consequence. Hash v. Commissioner,273 F. 2d 248 (4th Cir. 1959), affg. a Memorandum Opinion of this Court; Silverstein v. Commissioner,supra.Nor is it necessary that the corporation intended the payment or benefit to constitute a dividend. Loftin and Woodward, Inc. v. United States,supra.
Petitioner owned 65 percent of the stock of NCS and 100 percent of the stock of VLC. It is clear that the corporations' payment of the estate tax conferred an economic benefit upon petitioner. The estate tax was petitioner's and not the corporations' *265 liability; no assessment had ever been made against the corporations. Moreover, the record does not establish that NCS or VLC ever expected to be repaid. Prior to March 1978, neither NCS nor VLC had ever attempted to recoup any portion of their payments other than through their participation in the refund litigation. With respect to the refund litigation, it was only after the Court of Appeals for the Sixth Circuit directed the District Court to protect the interests of the decedent's heirs at law in providing for payment of the judgment that the decedent's daughters were appointed as co-administratrices and the corporations finally presented their claims to the estate. Aside from the obvious tardiness of the corporations' attempt to obtain repayment, it appears that no such attempt would ever have been made if it had not been for the Court of Appeals' concern for the decedent's heirs. Certainly, these facts militate strongly against a finding that NCS or VLC ever expected to be repaid, and the agreement between NCS, VLC, the DeNiro brothers, and the decedent's daughters settling their claims with respect to the decedent's estate and against each other does not require us to conclude *266 otherwise. If anything, the agreement tends to show that there was never any expectation that NCS and VLC would be repaid by petitioner. Pursuant to the agreement, the decedent's daughters released their claims to the estate apparently leaving the DeNiro brothers with uncontested possession of what they had originally acquired by deceit but at a cost of $30,000, and the corporations, in effect, agreed to pay petitioner's estate tax liability. NCS and VLC agreed to settle their "claims" against the estate in exchange for the refund (less attorney fees) due from the estate tax refund litigation, thereby foregoing any repayment for petitioner's actual estate tax liability as determined by the District Court. Nevertheless, petitioner insists that the payment made by VLC with respect to its estate tax constituted a loan. Whether this payment constituted a bona fide loan is a question of fact which depends upon the existence at the time of the payment of an intent on petitioner's part to repay the corporation and a corresponding intent on the corporation's part to enforce any such obligation *267 to repay. Pierce v. Commissioner,61 T.C. 424 (1974); Haber v. Commissioner,52 T.C. 255 (1969), affd. per curiam 422 F. 2d 198 (5th Cir. 1970). From the foregoing discussion, it is clear that we do not believe that the requisite intent existed at the time the payment was made. Although petitioner has relied upon an entry made on certain workpapers of VLC to support its claim that the payment was a loan, the entry was not made until the close of the fiscal year ending July 31, 1970, and denoted a "loan to officers" rather than petitioner, of $15,300, not $15,320. Moreover, bookkeeping entries alone are not conclusive evidence. Dean v. Commissioner,57 T.C. 32 (1971). No notes or other evidence were executed, no security was given, there was no agreement with respect to repayment of the debt or the payment of interest thereon, and no interest was ever paid. Accordingly, the record simply does not support the characterization of VLC's payment as a loan. We now consider whether the corporations' payment of the estate tax assessment primarily advanced petitioner's interests or the business interests of the corporations. *268 According to petitioner, the nominee liens that respondent placed upon all of the property owned by NCS and VLC severely hampered the business operations of both corporations. Furthermore, petitioner asserts that one of respondent's representatives had threatened to shut down both corporations unless the estate tax assessment was paid. Under these circumstances, petitioner argues that the corporations' payment of the estate tax was an absolute necessity and, indeed, that the corporations were forced to make the payments herein at issue to preserve their own existence. Accordingly, petitioner maintains that the corporations paid the estate tax primarily, if not solely, to advance their own business interests and, therefore, such payments do not constitute constructive dividends. On the record before us, we simply cannot find that the corporations paid the estate tax primarily to further their own business interest rather than petitioner's personal interests. Although it appears that the tax liens filed against NCS and VLC may have activated acceleration clauses in certain financing agreements entered into by the corporations, there is no indication that either of the corporations' *269 creditors ever attempted, threatened, or intended to enforce the acceleration clauses. Moreover, to the extent that liens may have burdened either corporation's operations, the payment of petitioner's estate tax was not the sole means by which the corporations could have obtained the removal of the liens. If, as argued by petitioner, the nominee liens filed against NCS and VLC were invalid, [4] then the corporations could have sought removal of the liens through a suit to quiet title pursuant to 28 U.S.C. sec. 2410. *270 Furthermore, most of the support for petitioner's position rests upon the testimony of Frank and Louis DeNiro. Unfortunately, we found both Frank and Louis to lack credibility and cannot accord any weight to their testimony. At trial, they testified that the liens filed against the corporations resulted in adverse publicity which prevented NCS from obtaining credit from its regular sources. Even if we believed such testimony, the record does not indicate that NCS required regular financing to conduct its business. Nor is there any evidence which shows that the financial institutions that purportedly refused to extend credit to NCS constituted a regular source of financing for the corporation. Furthermore, neither Frank nor Louis testified that such financial institutions refused to extend credit to NCS for normal business operations, but rather that NCS was denied credit to pay petitioner's estate tax. Finally, the fact remains that NCS was able to obtain a substantial loan that it used to pay petitioner's estate tax. Frank and Louis also testified that during the meeting at which they signed a Form 890 (Estate Tax Waiver of Restriction on Assessment and Collection of Deficiency *271 and Acceptance of Overassessment) Bernard Friedlander, an Internal Revenue Service attorney, threatened to padlock the doors of NCS and VLC and terminate their operations unless the estate tax assessment was paid. Nevertheless, Michael Ruggieri, another Internal Revenue Service attorney, was also present at the meeting, and he testified that no such threats were made and that the purpose of the meeting was to determine the fair market value of the estate's assets. We found Mr. Ruggieri to be a candid and credible witness and cannot accept the self-serving testimony of Frank and Louis. [5] Hence, we are unwilling to find that the corporations were forced to pay petitioner's estate tax assessment. *272 In arguing that the corporations were forced to pay its estate tax, petitioner has relied on language in DeNiro v. United States,561 F. 2d 653 (6th Cir. 1977), wherein the Court of Appeals affirmed the District Court's estate tax refund judgment. Therein the Court of Appeals indicated that the District Court had erred in dismissing NCS and VLC as plaintiffs, stating: We believe the district court erred in dismissing the corporations as plaintiffs. Liens had been filed against both corporations as nominees of the estate of Vincent DeNiro. Louis DeNiro testified without contradiction that he was told by an IRS representative that National Cigarette would be padlocked and Valley Land would be taken over if he and his brothers refused to sign Form 890, by which they accepted a proposed tax deficiency of $81,000 against the estate. He said the taxes were paid by the two corporations in order to continue in business. Frank DeNiro testified that as president of the two corporations he caused the deficiency assessment to be paid after the tax liens were placed against the corporations' property. Section 7701(a)(14) of the Internal Revenue Code *273 of 1954. 26 U.S.C. P7701(a)(14), provides: The term "taxpayer" means any person subject to any internal revenue tax. When a corporation which has been subjected to a lien on all its assets for unpaid taxes allegedly due from the estate of the deceased owner of all or a majority of its stock pays the assessment, it is not acting as a volunteer. On the contrary, by its actions the IRS has treated it as a "taxpayer," i.e., one subject to a tax, and if the requirements for claiming a refund have been met it has standing to sue for a refund. * * * [561 F. 2d at 656, footnotes omitted and emphasis added.] Since neither corporation appealed the District Court's dismissal, the above language is dictum and, in any event, deals with "standing" in respect of the right to claim a refund and not with the substantive tax issue involved herein. Moreover, the record in the instant case does contain credible testimony contradicting the alleged threats, and this Court, as the trier of fact, has found that both Frank and Louis lack credibility. Accordingly, we are of the opinion that NCS and VLC paid petitioner's estate tax voluntarily. Petitioner *274 has simply failed to prove that the liens filed against NCS and VLC posed a real threat to their business. While the payment of the estate tax incidentally benefited the corporations through the removal of the tax liens, we believe that the payment primarily advanced petitioner's interests. The corporations were not directly liable with respect to the payment of any portion of the estate tax; the fact that the nominee liens may have attached to the assets of the decedent, if any, held by the corporations does not require us to conclude otherwise. Compare Silverstein v. Commissioner,36 T.C. 438 (1961) and Ruben v. Commissioner,97 F. 2d 926 (8th Cir. 1938), revg. 36 B.T.A. 604 (1937). See also Sachs v. Commissioner,supra.The estate tax was petitioner's liability and the payment thereof protected its assets, which included a majority of the stock of both NCS and VLC, from respondent's jeopardy assessment. We hold that NCS's and VLC's payment of the assessment made against petitioner for its estate tax liability constituted a taxable dividend to the extent of the respective earnings and profits of each corporation. *275 Although petitioner argues that the respective earnings and profits of NCS and VLC were less than the amount of the assessment paid by each, the evidence contained in the record is insufficient to establish the accumulated earnings and profits of either corporation. Finally, petitioner maintains that the payments made by the corporation constitute taxable dividends only to the extent of the benefit it received from the payments, that is, only to the extent of petitioner's actual estate tax liability as determined in the subsequent refund litigation. During 1969, however, the amount of the benefit that petitioner received was the full payment of the jeopardy assessment respondent had filed against it and such amount is fully includable in its income in the year received. Secs. 446 and 451. Neither the outcome of the refund litigation nor petitioner's subsequentagreement to transfer its refund to NCS and VLC alter this fact. We have considered other arguments advanced by petitioner and found them unpersuasive. Accordingly, since petitioner has failed to prove the amount of either corporation's earnings and profits, we must sustain respondent's determination that petitioner *276 had taxable income of $104,577.04 as a result of the payments made by NCS and VLC. [6]
The final issue for decision is whether petitioner is liable *277 for the addition to tax under section 6651. Section 6651(a)(1) imposes an addition to tax for failure to timely file a return "unless it is shown that such failure is due to reasonable cause and not due to willful neglect * * *." [7] Whether a failure to timely file a return is due to reasonable cause is essentially a question of fact and the burden of proof is upon petitioner. Shomaker v. Commissioner,38 T.C. 192 (1962). *278 Petitioner maintains that no income tax return was filed for 1969 because its "tax advisors" did not believe that the corporations' payments of its estate tax constituted taxable income and were of the opinion that petitioner did not receive any income in 1969. Therefore, petitioner contends that its failure to file was due to reasonable cause. See Amo Realty Company v. Commissioner,24 T.C. 812 (1955); Twinam v. Commissioner,22 T.C. 83 (1954). Evidently, petitioner's reference to its "tax advisors" is to the accountants for NSC and VLC. Upon consideration of the record herein, however, we do not believe that the taxability of the payments to petitioner was ever considered, either by the corporation's accountants or the DeNiro brothers, who were in control of all of the estate's assets in 1969. Furthermore, petitioner has not even shown that its alleged "tax advisors" were competent in tax matters or had full knowledge of all the essential facts. See Fourth & Railroad Realty Co. v. Commissioner,25 T.C. 458 (1955); Mayflower Investment Co. v. Commissioner,24 T.C. 729 (1955), affd. 239 F. 2d 624 (5th Cir. 1956). *279 Under these circumstances, we cannot find that the failure to file was due to reasonable cause and must sustain respondent's imposition of the addition to tax. [8]
To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated section references are to the Internal Revenue Code of 1954, as amended. ↩
2. Respondent also determined that Louis R. DeNiro, Frank DeNiro, Jr., and Michael A. DeNiro were liable for the income tax deficiency and addition to tax as transferees of the Estate of Vincent DeNiro. In granting a motion for summary judgment filed by Louis, Frank and Michael DeNiro, we held that they were not liable as transferees. Estate of DeNiro v. Commissioner,T.C. Memo. 1979-168↩.
3. See sec. 2203.↩
4. Respondent has indicated that the nominee liens were filed against the two corporations because he believed that the corporations were in possession of some of the estate's property. In the criminal case in which the DeNiro brothers were convicted of attempting to evade and defeat the estate tax owed by petitioner, the District Court found that during his lifetime the decedent, who was in the numbers business, had kept record title to much of his property in the names of others, that he had complete control of NCS and VLC, and that NCS was his alter ego with respect to his financial transactions. United States v. Frank DeNiro, Jr., Michael DeNiro, and Louis DeNiro, an unreported case (N.D. Ohio, August 23, 1965), affd. United States v. DeNiro,392 F. 2d 753 (6th Cir. 1968), cert. denied 393 U.S. 826↩ (1968). It appears that the decedent's tendency to avoid record ownership of property and his control over NCS and VLC formed the basis for respondent's belief that the corporations held property belonging to the estate. Petitioner maintains the liens were invalid because neither NCS nor VLC held any of the decedent's property at the time of his death.
5. We believe that it is important to note at this point that the DeNiro brothers, NCS, and VLC agreed to assume all responsibility for the "prosecution or defense" of the instant litigation under the estate settlement agreement. Furthermore, pursuant to the same agreement NCS and VLC, which are controlled by the DeNiro brothers, are entitled to the estate tax refund judgment, but due to respondent's jeopardy assessment the corporations' receipt of a substantial portion of the refund is dependent upon the outcome of this litigation.↩
6. Respondent has also argued that the payment of the estate tax liability by the corporations constituted ordinary income to petitioner regardless of whether the corporations had sufficient earnings and profits to make the payment taxable as constructive dividends. See Davis v. United States,226 F. 2d 331 (6th Cir. 1955), cert. denied 350 U.S. 965 (1956), which held that a diversion of corporate funds by the dominant shareholder constitutes ordinary income regardless of whether such diversion could be treated as a taxable dividend. See also Weir v. Commissioner,283 F. 2d 675 (6th Cir. 1960), revg. and remg. a Memorandum Opinion of this Court; but see Dizenzo v. Commissioner,348 F. 2d 122↩ (2d Cir. 1965), affg. in part and revg. in part a Memorandum Opinion of this Court. Since we have found, however, that petitioner failed to prove that the corporations lacked sufficient accumulated earnings and profits to cover the payments, we need not address this argument.
7. SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX. (a) Addition to the Tax.--In case of failure.-- (1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof) * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate; * * *↩
8. Section 6012 provides that income tax returns shall be made by the fiduciary of every estate that has gross income of $600 or more for the taxable year. See secs. 6012(a)(3) and 6012(b)(4); sec. 1.6012-3(a)(1), Income Tax Regs. See also sec. 1.641(b)-2(a), Income Tax Regs. It is not clear whether anybody represented the decedent's estate in a fiduciary capacity at the time its return for 1969 was required to be filed. See sec. 7701(a)(6); sec. 301.7701-6, Income Tax Regs. See also Mertens, Law of Federal Income Taxation, sec. 36.130 (Vol. 6 1975); Grieb v. Commissioner,36 T.C. 156, 167↩ (1961). Nevertheless, petitioner has the burden of proof. Since petitioner has not raised the issue and the record has not been developed with respect thereto, we need not consider this question.