**Larry J. ENGELKEN, et al., Plaintiffs,**

v.

**The UNITED STATES of America, et al., Defendants.**

Civ. A. No. 92–F–1955.

United States District Court, D. Colorado.

March 1, 1993.

Howard J. Beck and Diana J. Payne, Beck, Cassinis & Hoyt, P.C., Aurora, CO, for plaintiffs.

Michael J. Norton, U.S. Atty., William G. Pharo, Asst. U.S. Atty., Denver, CO and Philip E. Blondin, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for defendants.

## ORDER REGARDING MOTION FOR PARTIAL SUMMARY JUDGMENT

SHERMAN G. FINESILVER, Chief Judge.

This is a case involving an alleged overpayment of taxes. This matter comes before the Court on Defendant's motion for partial summary judgment. Jurisdiction is based on 28 U.S.C.A. § 1331. The litigants have fully briefed the matter. For the reasons stated below, the motion is DENIED.

### I.

Plaintiff Larry J. Engelken is a general partner of Plaintiff Engineering Graphics Technology, Ltd. ("EGT").[1] EGT failed to

---

1. All factual recitations in this Order have been alleged in the litigants' pleadings.

pay Federal Insurance Contributions Act taxes for its employees for the calendar quarters ending September 30, 1982; December 31, 1982; March 31, 1983; June 30, 1983; September 30, 1983; and December 31, 1983. On September 3, 1984, EGT filed payroll tax returns for these periods and requested a prompt assessment by the Internal Revenue Service. The IRS assessed the taxes against EGT and its four general partners, including Engelken, George W. McLure, III, Lawrence E. Benthall, and William C. Detmer.

On September 6, 1984, the partnership and the four general partners submitted an Offer in Compromise (also "the Offer") to the Commissioner of the IRS. At that time, Revenue Officer John Howells accepted on behalf of the IRS the Offer's suspension of the statutory period of limitations applicable to IRS assessments and collections. On November 8, 1984, the IRS recorded two tax liens against EGT, Benthall, Engelken, Detmer, and McLure in Harris County, Texas for the taxes assessed on their return of September 3, 1984. The liens totalled $360,876.04. Engelken claims that in July 1986, in reliance on discussions he had with Bob Chirich in the IRS' office of the Houston Regional Director of Appeals and Art Barganier of the IRS' Special Procedures staff, he sold his house with the intent of applying the proceeds to the Offer in Compromise in satisfaction of his personal liability. Engelken claims he explained to Mr. Chirich that because he had no obligation to sell his home, he felt it would be inappropriate for his portion of the Offer in Compromise not to be credited with the proceeds, thus subjecting him to greater liability than any of his partners.

The IRS agreed to release the lien by granting Engelken's Application for Certificate of Discharge ("the Application") for the tax lien on the property referenced in the lien. On his application, Engelken had stated: "It is the intention of Taxpayer, Larry J. Engelken, to fully apply the proceeds (equity) in the subject property towards my 'Offer in Compromise' that is currently in Appeals in the District." Engelken claims by its acceptance of the Application the IRS thus agreed to apply the proceeds of the sale to the Offer in Compromise then pending in appeals before the IRS in Houston, Texas. On August 5, 1986, Engelken paid the proceeds from the sale of his house and other proceeds to the IRS in the amount of $44,294.87.

On March 7, 1989, EGT and its partners claim to have amended the Offer in Compromise, still not accepted by the IRS, with a collateral agreement regarding the partners' joint assessment. The collateral agreement provided that if the Offer in Compromise were accepted, the taxpayers would be released from, and the United States would waive all rights to collect, any amount in excess of the amount referred to in the Offer, or $250,220.18. On August 31, 1989, the IRS accepted the taxpayers' Offer in Compromise. Apparently, no reference was made to the collateral agreement.

On September 30, 1989, InterGraph Corporation ("InterGraph") paid the United States $252,220.18, as part of a contractual obligation with EGT and its partners, in satisfaction of the Offer in Compromise. Engelken subsequently discovered that the proceeds from the sale of his house had not been applied to the Offer in Compromise, and on May 5, 1990, he filed a claim for a refund. The IRS disallowed the claim on October 5, 1990 and again on December 3, 1990. On October 2, 1992, Plaintiffs brought suit in federal court.

## II. Summary Judgment Standard

Granting summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Ash Creek Mining Co. v. Lujan*, 934 F.2d 240, 242 (10th Cir.1991); *Metz v. United States*, 933 F.2d 802, 804 (10th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 416, 116 L.Ed.2d 436 (1991); *Continental Casualty Co. v. P.D.C., Inc.*, 931 F.2d 1429, 1430 (10th Cir.1991). A genuine issue of material fact exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Merrick v. Northern Natural Gas Co.*, 911 F.2d 426, 429 (10th Cir.1990). Only disputes over facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allen v. Dayco Prods., Inc.,* 758 F.Supp. 630, 631 (D.Colo. 1990).

In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the party opposing the motion. *Newport Steel Corp. v. Thompson,* 757 F.Supp. 1152, 1155 (D.Colo. 1990). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.,* 933 F.2d 891, 892 (10th Cir.1991); *Mountain Fuel Supply v. Reliance Ins. Co.,* 933 F.2d 882, 889 (10th Cir.1991).

In a motion for summary judgment, the moving party's initial burden is slight. In *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986), the Supreme Court held that the language of rule 56(c) does not require the moving party to show an absence of issues of material fact in order to be awarded summary judgment. Rule 56 does not require the movant to negate the opponent's claim. *Id.* at 323, 106 S.Ct. at 2553. The moving party must allege an absence of evidence to support the opposing party's case and identify supporting portions of the record. *Id.*

Once the movant has made an initial showing, the burden of going forward shifts to the opposing party. The nonmovant must establish that there are issues of material fact to be determined. *Id.* at 322–23, 106 S.Ct. at 2552–53. The nonmovant must go beyond the pleadings and designate specific facts showing genuine issues for trial on every element challenged by the motion. *Tillett v. Lujan,* 931 F.2d 636, 639 (10th Cir. 1991). Conclusory allegations will not establish issues of fact sufficient to defeat summary judgment. *McVay v. Western Plains Serv. Corp.,* 823 F.2d 1395, 1398 (10th Cir. 1987).

In reviewing the evidence submitted, the court should grant summary judgment only when there is clearly no issue of material fact remaining. In *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11, the Court held that summary judgment should be granted if the pretrial evidence is merely colorable or is not significantly probative. In *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Court held that summary judgment is appropriate when the trial judge can conclude that no reasonable trier of fact could find for the nonmovant on the basis of evidence presented in the motion and the response. *Id.* at 587, 106 S.Ct. at 1356.

## III. Standing

We first take up the United States' objection to Engelken's standing. The United States first relies on 26 U.S.C.A. § 6402, which states that "[i]n the case of any overpayment, the Secretary ... may credit the amount of such overpayment ... against any liability in respect of an internal revenue tax on the part of the *person who made the overpayment* and shall ... refund any balance to such person." (emphasis added). The United States claims that because Inter-Graph and not Engelken was the "person who made the overpayment," Engelken lacks standing to bring this action for refund. The United States cites the case of *Bruce v. United States,* 759 F.2d 755 (9th Cir.1985), in which a taxpayer was held to have no standing to sue for a refund of taxes paid on his behalf by his tax shelter attorney because he had "no financial interest in [the] litigation." *Id.* at 759.

The facts in *Bruce* are substantially dissimilar to those in the case at bar and we do not believe *Bruce* to be controlling. First, EGT, as well as its general partner, Engelken, do have a financial interest in the litigation. InterGraph satisfied the Offer in Compromise under a contractual obligation either to pay the amount to the IRS or to pay it to EGT. EGT's taxes were therefore paid with the property of EGT. Second, "[i]n the case of a credit, no one technically makes an overpayment yet the credit is refunded to the person entitled to receive it." *Bruce,* 759 F.2d at 759. In certain circumstances a person other than the actual payer of the tax may have standing to sue for a refund. *De-Niro v. United States,* 561 F.2d 653, 657 (6th Cir.1977) (finding beneficiaries and executors of estate had standing to sue for refund of taxes overpaid by estate). It is clear that

EGT and Engelken's allegations that they twice paid amounts in satisfaction of their deficiency make them potentially entitled to a refund. Where the IRS is alleged to have kept both the amount paid by InterGraph as well as that paid by Engelken, either Inter-Graph's payment or Engelken's could be considered the overpayment. *See id.* If Engelken can prove his assertion that he contracted with the IRS to credit certain proceeds toward the amount due in the Offer in Compromise, then any payments in excess of the amount due may be considered overpayments.

The United States next claims Engelken lacks standing because it was not he who was assessed taxes, but EGT. The United States cites *Bader v. United States*, 10 Cl.Ct. 78, 58 AFTR2d ¶ 86–5013 at p. 86–5060 (1986) which held that a partner was not the taxpayer for purposes of maintaining a refund action because the taxes at issue were assessed against the partnership. But in the case at bar, Engelken *was* assessed taxes along with the partnership. His name appears on both the original assessment and the tax liens, either of which subject him to taxation, as well as on the United States' acceptance of the Offer. The taxes here were assessed against both EGT and against the partners of EGT as agents for the partnership, pursuant to 26 U.S.C. §§ 3504 (agent in control, receipt, custody or disposal of or pays wages of employees employed by employer is liable for taxes to same extent as employer) and 6672 (member of partnership who fails to collect and pay withholding taxes is subject to those taxes). In any event, the United States can hardly claim Engelken was assessed no taxes when it allowed him to sell his home and accepted $44,294 from him as payment on those taxes.

## IV. Statute of Limitations

The United States asserts Plaintiffs' action should be dismissed because their claim for refund was not timely. Under 26 U.S.C. § 6511(a):

Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return

was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.

Plaintiffs filed their claim for refund on May 5, 1990. The United States maintains that because EGT filed its tax return on September 3, 1984 and Engelken paid the IRS the proceeds from the sale of his house on August 5, 1986, Plaintiffs' 1990 refund claim falls far outside even the three-year period on either the limitation measuring from the date of the return or from the tax payment on the return.

■ We believe there are several reasons the statute of limitations should not be held to have run. First, two independent clauses of section 6511(a) allow refund claims for two years after tax payment. Plaintiffs claim the last installment of InterGraph's payments to the IRS, having resulted in a credit to Plaintiffs' account, constituted a tax payment. Under 26 U.S.C. § 7422(d):

CREDIT TREATED AS PAYMENT— The credit of an overpayment of any tax in satisfaction of any tax liability shall, for the purpose of any suit for refund of such tax liability so satisfied, be deemed to be a payment in respect of such tax liability at the time such credit is allowed.

We agree that InterGraph's final installment payment on behalf of EGT was a tax payment. Furthermore, the United States seemed to assert when contesting standing, *supra*, that it was InterGraph who made the overpayment, and we note accordingly that InterGraph made the final installment of its payment on September 30, 1989. Plaintiffs' claim for refund was filed within two years of this last payment. We have already stated our belief that Plaintiffs had a financial interest in the payment.

The second rationale for holding that the statute of limitations has not run is found in 26 U.S.C. § 6511(c)(1):

**Special rules applicable in case of extension of time by agreement.**—If an agreement under the provisions of section 6501(c)(4) extending the period for assessment of a tax ... is made ...—

**(1) Time for filing claim.**—The period for filing claim for credit or refund ... shall not expire prior to 6 months after the expiration of the period within which an assessment may be made pursuant to the agreement ...

The Offer in Compromise clearly contains an agreement by the IRS and Plaintiffs to suspend the applicable statute of limitations for assessment by the IRS "for the period ... during which any installment remains unpaid, and for 1 year thereafter." The final installment was paid on September 30, 1989. Adding one year to September 30, 1989 under the Offer and another six months under section 6511 yields a statute of limitations that runs out on March 31, 1991. Plaintiffs' claim for refund of May 5, 1990 was timely made.

■■■ Finally, taking as true Plaintiffs' claims of their contracts to satisfy the Offer in Compromise, we note that much of the confusion and inconsistency in the United States' and even Plaintiffs' briefs stems largely from the fact that Plaintiffs claim to have been taxed twice ($44,294.87 and $252,220.18) for the same tax event (EGT's 1983 deficiencies). Under the doctrines of equitable recoupment and mitigation of limitations period, the statute of limitations is suspended where its enforcement would result in double taxation because of the IRS' inconsistent treatment of a single transaction. *See Rothensies v. Electric Storage Battery Co.,* 329 U.S. 296, 299, 67 S.Ct. 271, 272, 91 L.Ed. 296 (1946) (equitable recoupment limited to circumstances where a single transaction is both the tax event claimed upon and the event considered in recoupment); *Stone v. White,* 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937); *Bull v. United States,* 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935); *Oklahoma Gas and Electric Co. v. United States,* 464 F.2d 1188, 1189 (10th Cir.1972) (citation omitted) (purpose of mitigation of limitations period is "to correct tax inequities where the statute of limitations ... would serve to create a double taxation or double escape from taxation to the unjust hardship or benefit of either the taxpayer or the government").

We do not believe equity would allow us to dismiss Plaintiffs' claim where their knowledge of that claim did not arise until they discovered what the IRS had done with their tax payments in satisfaction of the Offer in Compromise. That knowledge was not available until after InterGraph's final payment on behalf of Plaintiffs on September 30, 1989.

For all the foregoing reasons, we hold Plaintiffs' claims are not barred by the statute of limitations.

### V. Terms of the Offer in Compromise

■■■ The United States' final argument is that paragraph 3(a) of the Offer in Compromise provides that "the United States shall keep all payments and other credits made to the accounts for the periods covered by this offer ..." Under the terms of the Offer in Compromise, the United States believes it is entitled to keep all monies paid on accounts of EGT for the taxable periods ending September 30, 1982 through December 31, 1983. Insofar as it goes, this interpretation would appear to be correct.

The question of material fact before the Court, however, is whether the Offer in Compromise was modified. Agreements compromising tax litigation are contracts and, as such, they are subject to the rules applicable to contracts. *Smith v. United States,* 850 F.2d 242, 245 (5th Cir.1988); *Kurio v. United States,* 429 F.Supp. 42, 46 (S.D.Tex.1970). Plaintiffs have put forth enough evidence to entitle them to prove at trial that the Offer was modified, including Engelken's own dealings with the IRS regarding the tax liens on his property and EGT's alleged modification of the Offer by collateral agreement.

■■■ Engelken discussed with two IRS officials his desire to apply the proceeds of his house to satisfy part of the Offer in Compromise. It is clear that a taxpayer making voluntary payments may designate to which liability the payment is to be applied. *Fullmer v. United States,* 962 F.2d 1463, 1468 (10th Cir.1992); *In re Technical Knockout Graphics, Inc.,* 833 F.2d 797, 801 (9th Cir.1987). A voluntary payment is one not made pursuant to a judicial or administrative order. *Davis v. United States,* 961 F.2d 867, 878 (9th Cir.1992). Engelken made it clear to the officials that he felt himself under no obligation to sell his home, and therefore

would not apply the sales proceeds to the Offer in Compromise without some assurance that he would not end up paying both the proceeds from his home and his expected share of the Offer. He was apparently encouraged enough by his conversations with the officials to explicitly state in his Application for Certificate of Discharge that he wished to be discharged from the tax lien and have the proceeds of the sale of his house go to the amount of the Offer in Compromise, to condition the contract for the sale of his house on obtaining a discharge from his lien, and to sell his home. The IRS accepted Engelken's application for the discharge unconditionally. Engelken later repeated his intention to sell the home and apply his proceeds to the Offer in Compromise in a letter to Bob Lanham, Chief, Special Procedures Staff. It is difficult to conceive that Engelken would have paid over the proceeds of sale to the IRS if he had reason to think his liability would be anything but reduced as a result. Plaintiffs should be allowed to attempt to prove their assertions of oral and implied contractual modification.

EGT also claims to have modified the Offer in Compromise through a collateral agreement sent to the IRS in March 1989, before the IRS had accepted the Offer. The collateral agreement stated that the amount paid through the Offer would be in full satisfaction of any deficiencies which could be assessed against the partners or EGT. It is unclear whether the IRS repudiated the amendment to the Offer, arguably making its acceptance of only the Offer into a counteroffer accepted by InterGraph's payments, or whether the IRS impliedly accepted the modification effectuated by the collateral agreement. The facts are sufficiently unclear as to preclude a finding that the United States has met its burden on summary judgment.

## VI.

Accordingly, it is ordered that:

Defendants' Motion for Partial Summary Judgment, filed January 29, 1993, is DENIED.